In re Application of all Nebraska Railroads. Chicago, Burlington & Quincy Railroad Company et al., appellees, v. Herman Bros., Inc., et al., appellants.

82 N. W. 2d 405

Filed April 12, 1957. No. 34041.

*Robert E. Powell,* for appellants.

*J. A. C. Kennedy, R. D. Neely, Guy C. Chambers, G. C. Holdrege,* and *J. W. Weingarten,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This appeal is directly related to a companion case, No. 34040, Chicago, B. & Q. R. R. Co. v. Herman Bros., Inc., *ante* p. 247, 82 N. W. 2d 395. While these cases were heard on separate records, in many respects the

principles involved are identical, and the issues in the two cases are so closely related that the argument of the appellants in opposing the orders issued by the Nebraska State Railway Commission, hereinafter referred to as the commission, are very similar. We have considered the two cases together, but deem it necessary to render separate opinions in connection with the same due to a different order of the commission affecting a different point of origin in this state to other stations in this state.

This appeal is from the order of the commission in which the commission approved and allowed to become effective certain reduced rail rates governing the transportation of petroleum and petroleum products in tank carloads from the point of origin, Kaneb, Nebraska, to 103 specified points of destination in this state, which traffic moves in intrastate traffic. The appeal is directed to the commission's order of February 7, 1956, approving the rates and charges proposed by Nebraska railroads, and as to the confirmation of said order by the opinion, findings, and order of the commission dated March 12, 1956, overruling appellants' motion for rehearing.

On December 29, 1955, Nebraska railroads filed an application with the commission for authority to revise rates from Kaneb, Nebraska, to Nebraska destinations, the rates proposed in the Western Trunk Line Tariff 448 to take the place of present rates.

On December 30, 1955, Herman Bros., Inc., and other Nebraska motor carriers filed a complaint and request for formal hearing before the commission. The commission set the matter for hearing on January 23, 1956. On February 7, 1956, the commission, by its order, authorized the proposed rates contended for by the applicants to be applied March 1, 1956. The appellants filed a motion for rehearing on February 21, 1956. Argument was had before the commission on the motion for rehearing on March 12, 1956. This motion was overruled on the same date. From the order overruling the mo-

tion for rehearing, the appellants have appealed.

We have reviewed the evidence in the companion case, No. 34040, and make reference to the evidence insofar as the same may be pertinent in the instant case. However, we deem some review of the record necessary in the instant case relating to the subject matter of this appeal as to the commission's order of February 7, 1956.

The record discloses that there is a pipe-line terminal at Kaneb, Nebraska, which is located 2 miles north of Geneva. Rail shipping facilities were constructed and completed at this pipe-line terminal. The commission authorized intrastate rail rates on petroleum on the same basis that the rail rates were then in effect from other rail shipping points in this state by order of the commission dated December 16, 1955. At that time the appellees' application to the commission, filed November 21, 1955, for permission to establish rates on petroleum from other rail shipping points in Nebraska to all Nebraska stations 1½ cents per 100 pounds under the truck rates on gasoline for distances of 75 miles or more, and rates no lower than the truck rates for distances less than 75 miles, was pending before the commission.

The Interstate Commerce Commission established rates, as shown in Western Trunk Line Tariff 448, on the same basis as the proposed rates requested by the rail carriers in their application before the commission, filed November 21, 1955. Such rates by the Interstate Commerce Commission became effective December 1, 1955, for interstate transportation in Nebraska pursuant to a decision of the Interstate Commerce Commission, I. & S. docket No. 5853, 289 I.C.C. 457. The Nebraska State Railway Commission granted appellees permission to establish such rates January 1, 1956, between such rail shipping points in this state, namely Omaha, South Omaha, Superior, Scottsbluff, and Doniphan, and Nebraska stations as published in tariff 448.

The proposed rates from Kaneb are set forth in a

schedule made a part of the appellees' application, and named rates to only 103 Nebraska stations because a shipper requested the rates to only the stations named. The appellees assert that if any shipper requests rates from Kaneb to other stations, the appellees will make proper application to the commission to establish such rates; and that the appellees limited the application of the rates to the stations requested in order to establish them as expeditiously as possible.

As previously stated, substantially the same facts set forth in our opinion in case No. 34040 involving appellants' appeal from the order of the commission authorizing the rates as set forth in tariff 448, effective January 1, 1956, are pertinent to this case. No useful purpose would be accomplished by again restating such facts.

The appellants refer to evidence to the effect that the proposed rail rates are, in some instances, to some degree more than 1½ cents a 100 pounds below the truck rates on heavier fuels.

The appellants also point to evidence in connection with the proposed car-mile earnings which is set forth in exhibit No. 1, stating that the car-mile earnings are figured on the absolute short-line mileage between point of origin and destination, rather than on the actual route of movement; that said car-mile earnings do not take into consideration switching costs or other costs of operation such as empty movement of tank cars; that no shipper appeared in support of appellees' application; also to evidence on behalf of appellants to the effect that the proposed reduced rail rates from Kaneb, and from other points of origin involved in the companion case No. 34040, were considerably less in the majority of cases than the existing rates of the motor carriers, this being true with reference to a comparison of the proposed rail rates from the various origins with the motor carrier rates on the heavier fuels.

The appellants introduced comparisons and analyses

of rates proposed by the appellees which they contend show that such proposed rates in the case at bar have no relation whatever to actual movements by way of rail, and will produce discrimination and inequalities.

There is other evidence of the appellants to the effect that even in instances where rail carriers have established rates lower than truck rates in any given area, the price of the commodity to the ultimate consumer has not been reduced; that while the number of rail tank cars suitable for the transportation of petroleum products has increased slightly since before World War II, the amount of such products has increased from about 2½ to 3 million barrels of crude oil per day prior to the war, to slightly less than 8 million barrels a day at the present time, and as a consequence the tank car fleet of this country is being operated at near maximum capacity; that if the differential theory of the appellees is approved it would have a tendency to increase competition by unregulated private carriers, which would act to the detriment of the motor common carriers and would not benefit the railroads; that the motor carrier rates from the Kaneb pipe-line terminal to points of destination in Nebraska were originally established by the motor carriers voluntarily, and based on the cost of motor carrier operation and not rail costs; and that in the past motor carriers have lost some traffic which they had handled previously when the railroads reduced rates below the existing motor carrier rates, and thus disrupted the parity of rates as between the two modes of transportation.

In this appeal it is not disputed that the commission granted the appellees permission to establish, effective January 1, 1956, similar rates from all Nebraska rail shipping stations except Kaneb to all Nebraska stations; nor is there dispute that similar rates became effective December 1, 1955, on interstate traffic from all rail shipping points in adjoining states to Nebraska stations and also between Nebraska stations when the Interstate

Commerce Commission did not suspend rates as set forth in tariff 448. It is not disputed that the aforesaid rates, including the proposed rates from Kaneb, were formulated in exact accord with the formula approved by the Interstate Commerce Commission in I. & S. docket No. 5853, 289 I.C.C. 457.

The granting of the application would place Kaneb rates on the same basis as other shipping points with respect to interstate rates as well as intrastate rates.

Section 75-402, R. R. S. 1943, provides in part: "The lowest rates published or charged by any railway company for substantially the same kind of service, whether in this or another state, shall, when introduced in evidence, be accepted as prima facie evidence of a reasonable rate for the services under investigation."

In this connection, we make reference to the citations of authorities in the opinion in case No. 34040 dealing with prima facie evidence.

We find nothing in the appellants' pleading or evidence tending to show why Kaneb should not be accorded rail rates in effect on the same basis from similar rail shipping points, and the appellants did not argue anything of that nature in their brief in the instant case. In fact, appellants' argument is almost in its entirety a repetition of their argument made in case No. 34040, wherein they contended that the rates were discriminatory against highway motor carriers; that the commission made no finding that the rates would not be discriminatory; that the proposed rates were not shown to be compensatory; and that they deprived appellants of a vested right under section 75-222, R. R. S. 1943. We have discussed and determined these matters in our opinion in case No. 34040.

With reference to the proposed rates from Kaneb, Nebraska, being discriminatory against shippers and appellants, the appellants cite the rate of 6 cents to Ong for a distance of 22 miles, a rate of 6 cents to York for a distance of 50 miles, a rate of 11 cents to Lincoln

for a distance of 60 miles, and a rate of 9 cents to Fairbury a rail distance of 124 miles. The highway distance to Fairbury is not shown, but is under 74 miles. Exhibit No. 1 discloses the truck rates from Kaneb to Ong to be 5.758 cents; to York 5.909 cents; to Lincoln 10.758 cents; and to Fairbury 9.091 cents. Thus, the proposed rates of 6 cents to Ong and York, 11 cents to Lincoln, and 9 cents to Fairbury are approximately the same or higher than the appellants' rates to the same points. Certainly, the appellants are not in a position to complain about such rates. Again, the appellees, in formulating the rates to these points were not permitted to go below the truck rates on gasoline for distances of less than 75 miles. That is the reason given by the appellees that the proposed rail rates are approximately the same as the truck rates to those points.

Exhibits Nos. 1 and 6 show that in most instances the revenue per car-mile under the proposed rates will yield more than double the operating cost per car-mile of handling freight traffic of the several appellees. For instance, the Chicago & North Western Railway Company shows a cost per car-mile of 33 cents; the Chicago, Saint Paul, Minneapolis & Omaha Railway Company, 35.16 cents; the Chicago, Burlington & Quincy Railroad Company, 24.96 cents; the Chicago, Rock Island & Pacific Railroad Company, 25.06 cents; the Union Pacific Railroad Company, 21.72 cents; and the Missouri Pacific Railroad Company, 27.70 cents. The appellants' argument is that these are system figures, but there is no reason why these figures should not be accepted as evidence of cost of handling freight traffic. Certainly, rates that show such yield of revenue per car-mile must be, and are, compensatory.

With reference to the fact that the proposed rates on heavier oils will be more than $1\frac{1}{2}$ cents per 100 pounds below truck rates on the same commodities, this creates no basis for objection to the permission granted. We have previously, in our decision in the companion

case, discussed this issue. The fact that the proposed rates are from Kaneb to only 103 Nebraska stations instead of to all stations furnishes no basis for proper objection. As heretofore stated, if shippers request rates to other stations in Nebraska in addition to the 103 stations referred to, the appellees undoubtedly will request permission to establish similar rates to other stations.

We find no evidence in the instant case of unjust discrimination or undue prejudice, and we cannot assume such to be existent. In any event, the rates authorized by the commission are subject in the future to the right of any one claiming unjust or unlawful discrimination or undue prejudice to complain to the commission and present evidence in support thereof.

With reference to other decisions cited by the appellants on the basis of which they argue that because the Interstate Commerce Commission has refused to allow rail carriers a differential of $1\frac{1}{2}$ cents per 100 pounds in other areas, as indicated by the decisions cited by the appellants, or similar differentials in other commodities, the question of whether such a differential should be allowed in Nebraska or in the area tributary thereto is open for determination.

We have heretofore referred to I. & S. docket No. 5853, 289 I.C.C. 457, which refers to this area. This decision of the Interstate Commerce Commission was sustained by the federal courts in Ward Transport v. United States, 125 F. Supp. 363, affirmed in 348 U. S. 979, 75 S. Ct. 570, 99 L. Ed. 762, following which the appellees filed tariff 448 with the Interstate Commerce Commission naming interstate rates to and between stations in Nebraska constructed in accordance with the formula prescribed in I. & S. docket No. 5853, and the Interstate Commerce Commission allowed tariff 448 to go into effect December 1, 1955, as published. Other cases relating to other areas are not important or material in the instant case until the Interstate Commerce

Commission reverses its decision in I. & S. docket No. 5853 and prescribes some other formula to be followed.

We conclude that the order appealed from is valid and within the authority of the commission, is not arbitrary or unreasonable, and should be and is affirmed.

AFFIRMED.