IN RE APPLICATION OF OAKDALE TELEPHONE COMPANY, OAKDALE, NEBRASKA, A CORPORATION.
OAKDALE TELEPHONE COMPANY, APPELLANT, v. HENRY WILGOCKI ET AL., APPELLEES.
106 N. W. 2d 486

Filed December 9, 1960.   No. 34844.

*O'Hanlon & O'Hanlon,* for appellant.

*Charles W. Raymond,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from the Nebraska State Railway Commission. It will hereinafter be called the commis-- sion. It involves an application for an increase of rates by the Oakdale Telephone Company of Oakdale, Nebraska. It will hereinafter be called the company. One of the appellees is Henry Wilgocki,ʳ one of two witnesses who testified for appellees at the hearing hereinafter referred to. They will where necessary be referred to as protestants or by name.

The commission denied the application. The company appeals. We reverse the order and remand the cause.

The company operates a magneto type service to some 287 customers in Oakdale and the area adjacent thereto. It has 15 rural lines. It received its last rate increase in March 1948. It keeps its books and records under the system prescribed by the commission for class "C" companies. It employs two operators of its switchboard. One received $65 per month with $5 deducted for house rent. The other received $60 per month. It asks for rates sufficient to increase the rate of pay of these operators to $105 and $100 per month, respectively. It has not had revenue sufficient to employ a lineman since the spring of 1959. The maintenance of its system has deteriorated since that time. It employs the services of a lineman of a neighboring

company when emergency service is required. It asks for rates sufficient to pay $250 per month for plant maintenance personnel.

It has had no regular bookkeeper since August 1959. It employs accounting service at the rate of $115 per month. It asks for a rate increase sufficient to pay an increased cost of $865 per year for that service.

The company claims a total investment as a rate base of $23,730.43. On that base it had a net earning of $41.09 for the year 1959. It asks for rates that would increase its earnings to $1,154.38 or a return of 4.94 percent on substantially the above rate base.

One of the witnesses was Joe Knievel, who testified that he was a director of a telephone company with offices in South Sioux City, which had been interested in acquiring the company—applicant here. He testified that the South Sioux City company "came up" with a value of approximately $15,000 for the Oakdale plant and franchise.

The applicant admits that the services it now renders are not of a commercial quality but offered testimony that if given the proposed rate increase it could restore its plant and give that quality of service.

The above facts are taken from the application of the company and the evidence at the hearing. They are recited as preliminary to the matters which we discuss.

It appears that controversy has arisen between stockholders about the election of officers and directors and that it has become a matter of litigation in the district court for Antelope County. At the opening of the hearing, later discussed herein, the attorney for the protestants moved for a continuance until that litigation was determined. He offered, but did not identify, the petition in the district court proceeding. The commissioner conducting the hearing said that the commission had decided it would take testimony concerning rates and charges only. The attorney for the protestants asked to preserve his objection and that the commission

consider it when it arrived at a decision. Nevertheless the protestants, as a part of their showing, later made formal offer of a certified copy of the petition and it was received over objection, although not "very pertinent."

The application in this case was filed February 1, 1960. Hearing thereon was set for March 10, 1960, at Neligh, Nebraska, and later continued to and had on April 6, 1960.

Rule 4.7 of the Rules of Practice and Procedure before the Nebraska State Railway Commission provides that: "The Commission may in its discretion assign any case before it to an Examiner for initial hearing. All Examiner's reports and recommendations shall be served upon the interested parties of record. Within ten days after the date of the mailing of the Examiner's report and recommendation, any party may file and serve exceptions thereto and reasons in support thereof. Exceptions to the Examiner's report with respect to statements of fact and matters of law must be specifically stated and numbered separately. If exceptions are taken to conclusions in the report, the points relied upon to support the exceptions must be stated and numbered separately. If no exceptions are filed within ten days after the mailing of the Examiner's report and recommendation, the Commission will consider same and render its decision."

Rule 6.1 of the Rules of Practice and Procedure before the Nebraska State Railway Commission provides that: "Ordinarily no oral argument will be permitted at the close of the hearing. However, the Commission or Examiner may request or permit such argument. The Commission will hear oral argument in all cases on exceptions to the Examiner's report and recommendation, and on motion for rehearing, where there is a prior request therefor in writing. Unless otherwise ordered by the Commission, oral argument will be limited to thirty minutes on each side."

The "initial hearing" here was conducted by one of the commissioners. Obviously he was acting in the capacity of and with the duties and responsibilities of an examiner. He made no report or recommendation to the commission and of necessity none was or could be served on "interested parties of record." There was accordingly no opportunity given to serve exceptions thereto and reasons in support thereof.

The hearing before the commissioner was concluded on April 6, 1960. One week later on April 13, 1960, it filed what is recited to be its "Opinion and Findings." It consists of one sentence: "The Commission, having considered the application, filings *and the evidence in the matter,* is of the opinion and finds that the application should be denied." (Emphasis supplied.) It ordered the application "denied."

The commission by the expedient of having a commissioner hear this cause sought to avoid compliance with the intent and purpose of rule 4.7 hereinbefore mentioned. There was no report and recommendation of the one commissioner for the commission to consider and upon which to "render its decision," save and unless the report and recommendation was made in secret. This conclusion is made clearly apparent when it is considered that the notice of appeal was filed herein on April 27, 1960. The bill of exceptions was prepared on May 2, 1960, and together with exhibits was filed with the commission on May 3, 1960. This was 3 weeks after the commission entered its formal recital on April 13, 1960, that it had "considered * * * the evidence in the matter" before denying the application.

There are in rule 5 on evidence several rules applicable to a commissioner or examiner holding hearings. One of them is: "When objection is made to the admissibility of evidence, the presiding Commissioner or Examiner may receive such evidence subject to later ruling by the Commission." Rules of Practice and Procedure before the Nebraska State Railway Commis-

sion, Rule 5.1. What was the ruling of the commission on the admissibility of the copy of the petition of the pending Antelope County action? This record reveals nothing in answer to that question nor to the question to what extent, if any, that pending action was the basis for the decision herein. The procedure followed by the commission here prevented the applicant from raising that question.

Rule 6.1 hereinbefore mentioned provides that the commission will hear oral argument in all cases on exceptions to the examiner's report and recommendations. By the expedient of having neither report nor recommendation in compliance with its rules, oral argument by the applicant was denied.

This record is replete with repeated avoidances of the commission's own rules and those rules which are in American justice designed to assure an applicant a fair hearing before the commission. Due process was denied the company. The applicant and this court are left facing the question unanswerable from the record: Why was the application denied?

The company on the evidence produced is denied a fair return on its invested capital, even on the value fixed by the protestants; it is denied the revenue to secure necessary employees to maintain and operate its plant; it is denied the opportunity to pay employees an adequate, reasonable wage; and it is denied the revenue necessary to put its plant in a condition to render reasonable service. The company's patrons are denied the service that public convenience and necessity entitles them to in this age. Parenthetically, it may be pointed out that of the almost 300 patrons of the company, only two witnesses appeared against the allowance of the application. One of those was admittedly interested in securing the ownership of the company for the South Sioux City company. The other seemed to take the position that the company should first rehabilitate its lines and modernize its plant at the ex-

penditure of considerable funds. To that the company replies that its present revenues are such that the securing of outside capital is a practical impossibility and that by the provisions of its articles of incorporation its power to borrow is limited to "30 percent of the paid-up capital stock" of the corporation, and that the above provision "cannot be amended."

We had a somewhat comparable situation in Skeedee Independent Tel. Co. v. Farm Bureau, 166 Neb. 49, 87 N. W. 2d 715. There we said: "A mere recital of this record is sufficient to show that the commission's acts, violating its own rules made for its own proceedings and violating those rules made by it for the protection of the rights of an applicant, were unreasonable and arbitrary. The applicant, for all this record shows, was accorded no hearing before the commission. The commission listened to no argument (section 75-402, R. R. S. 1943); it made no finding of facts; it gave the applicant no reason for its action; and it provided no basis for a review of findings of fact. * * * the effect of the order is to find that there was no need for more revenue so that the applicant could meet the needs of its property for maintenance, betterments, and extension of service. Also that there was no need for more revenue to meet the applicant's fixed charges such as taxes and interest. Also that there was no need for more revenue to meet the payment of an adequate fair return to its stockholders. As to these three areas of need, the evidence was unchallenged. The commission denied any relief to the applicant without an examiner's report, without a hearing by the commission, and apparently without access to the transcript of the evidence. * * * The duty of determining what conclusion should be made as to those matters rests upon the commission. The commission has the duty to give full, adequate, and fair consideration to the claims of an applicant for rate increases. The applicant has the right to require that it be done. * * * The commission should consider each

of the several items and make findings of fact thereon. In that way if the applicant is dissatisfied, we, on appeal, may consider the matter in the light of the rule that: On appeal to the Supreme Court from an order of the Nebraska State Railway Commission, while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary. Chicago, B. & Q. R. R. Co. v. Keifer, 160 Neb. 168, 69 N. W. 2d 541.

"The evidence here does not meet that test.

"There is evidence here which, without dispute, demonstrates that the commission's finding denying any rate increase applicable thereto was unreasonable and arbitrary.

"A public utility is entitled to rates for its service that may normally be expected to yield a fair return upon the reasonable value of the property that is being used for the public convenience. Marquis v. Polk County Telephone Co., 100 Neb. 140, 158 N. W. 927; Omaha & C. B. St. Ry. Co. v. Nebraska State Railway Commission, 103 Neb. 695, 173 N. W. 690."

(Here there is a question about the base value of the company's property, but a substantial value is conceded by protestants.)

"There is no question about the return that the rates required by the commission may normally be expected to yield. There is no question about the amount that the applicant may be able to pay to its investors. There can be no question that it is not a fair return on invested capital.

"The order of the commission is clearly wrong. It is reversed and the cause remanded."

We repeat and again hold what we said and held in Skeedee Independent Tel. Co. v. Farm Bureau, *supra*.

REVERSED AND REMANDED.