IN RE PRESCRIPTION OF REASONABLE RATES AND CHARGES FOR MOTOR CARRIERS OF PROPERTY.
READY MIX, INC., BLOOMFIELD, NEBRASKA, ET AL., APPELLEES, v. NEBRASKA RAILROADS OF WESTERN TRUNK LINES COMMITTEE, APPELLANT, IMPLEADED WITH NEBRASKA SAND, GRAVEL AND READY MIXED CONCRETE ASSOCIATION, APPELLEE, HARGLEROAD INC., A CORPORATION, ET AL., INTERVENERS-APPELLEES.

150 N. W. 2d 275

Filed May 5, 1967. No. 36481.

Mason, Knudsen, Berkheimer & Endacott, for appellant.

Einar Viren and James E. Ryan, for appellee Ready Mix, Inc.

Robert A. Skochdopole and James W. Hewitt, for appellee Nebraska Sand, Gravel & Ready Mixed Concrete Assn.

Robert E. Powell, Richard A. Peterson, Nelson, Harding, Acklie, Leonard & Tate, and James E. Ryan, for interveners-appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

The Nebraska State Railway Commission authorized commodity rates for intrastate transportation of cement by motor common carrier, and protesting railroads have appealed. We review (1) sufficiency of the evidence, which was received at a trial type of hearing before an examiner, and (2) denial of a request for oral argument to the commission.

Cement has been produced and distributed at noncompetitive points. Class rates regulated intrastate transportation by motor common carrier, but they were paper rates, two and three times higher than the rates under review. In 1965 and prior to the present proceeding

the commission introduced commodity rates known as ex-rail rates. They were applicable only in the event of a prior line haul movement of bulk cement by rail. Competition has been virtually nonexistent.

Prima facie evidence of reasonable rates may consist of the lowest rates published by any common carrier for substantially the same kind of service. See § 75-123, R. R. S. 1943. The commission based its order on a scale of distance rates published by two motor common carriers in interstate commerce. The scale applied to transportation of cement from designated points of origin in Nebraska to destinations in Iowa, Missouri, Kansas, South Dakota, North Dakota, and Minnesota. The commission also considered a tariff on cement transported between points in Iowa. The tariff had been filed by a motor carrier certificated in Iowa and Nebraska. Its president compared transportation conditions: "A * * * Actually all rates in Iowa are a few percentage points lower than they are in Nebraska both on petroleum and bulk commodities. Q Is that the only difference * * *? A In our operations, and we operate about 40% in Iowa, that is the only difference that I can see."

Some of the rates in cents on a barrel (376 pounds) of portland cement in bulk show the general levels:

| Mileage Factor | Nebraska Under Review | Nebraska Ex-rail | Iowa | Interstate |
|---|---|---|---|---|
| 6- 10 | 29 | 24.44 | 28 | 29 |
| 11- 15 | 32 | 28.20 | 30 | 32 |
| 16- 20 | 34 | 31.96 | 32 | 34 |
| 26- 30 | 38 | 39.48 | 36 | 38 |
| 41- 45 | 44 | 45.12 | 42 | 44 |
| 56- 60 | 50 | 56.40 | 48 | 50 |
| 66- 70 | 55 | 62.04 | 52 | 55 |
| 96-100 | 67 | | 64 | 67 |
| 146-150 | 99 | | 92 | 99 |
| 196-200 | 130 | | 124 | 130 |
| 241-250 | 162 | | 154 | 162 |
| 291-300 | 193 | | 184 | 193 |

| 381-400 | 256 | 244 | 256 |
| 481-500 | 319 | 304 | 319 |

Many companies manufacturing concrete products, selling cement, or constructing highways protested the rates. The board of directors of the Nebraska Sand, Gravel and Ready Mixed Concrete Association had stated: The "* * * long established policy of this association * * * is that the movement of cement by rail is in the best interest of the ready mixed concrete industry in Nebraska, * * *." The equipment and plants of the companies are substantial assets, and they are served satisfactorily by rail. Witnesses said that authorization of the proposed rates would create these risks: Diminution of rail service; higher rail rates, high motor carrier rates; unrest among teamsters; increase of price to users of cement products; and competition from ready-mix plants to be served by motor carriers.

The railroads introduced evidence to show that diversion of traffic would be detrimental not only to them but to shippers also. Transportation of cement is a substantial business, and the railroads are building many hopper cars at great cost. A decrease of revenue would affect their building program and freight tariffs. Raising no issue of cutthroat competition from noncompensatory rates, they requested one limitation—a prior line haul movement of the cement by rail.

In contrast complaints were made by two operators of ready-mix plants. Their businesses were small and their needs debatable. One motor carrier besides the applicant carrier displayed interest in lower rates.

The commission has a duty to prescribe necessary rates and classifications of freight. § 75-118, R. R. S. 1943. The meaning of the word "necessary" has been shaped by the policy of the Legislature "to (1) regulate * * * motor carriers * * * in such manner as to recognize and preserve the inherent advantages of * * * such transportation * * * in the public interest; (2) promote * * * service by

motor carriers, and reasonable charges therefor, without * * * unfair or destructive competitive practices * * *." § 75-301, R. R. S. 1943. The statutes require nothing more than reasonable usefulness in the public interest. See Causey v. Jones, 193 Miss. 495, 10 So. 2d 356.

The railroads are insisting that the commission must hold truck rates up in order to protect railroad business. Their reasons are unconvincing. The practical results of actual operation may necessitate adjustment of rates in the future, but the possibility should not abort legislative and administrative policy. The evidence left the commission free to select commodity rates instead of class rates, and authorization of the distance scale was reasonable. See, Chicago, B. & Q. R.R. Co. v. Herman Bros., Inc., 164 Neb. 265, 82 N. W. 2d 405; Chicago, B. & Q. R.R. Co. v. Herman Bros., Inc., 164 Neb. 247, 82 N. W. 2d 395; Schaffer Transp. Co. v. United States, 355 U. S. 83, 78 S. Ct. 173, 2 L. Ed. 2d 117.

The commission denied a request for oral argument prior to decision, but it heard argument on the motion of the railroads for rehearing. Common carriers are entitled by statute to be heard in rate cases to the end that justice may be done. A rate order is not a rule, and in contested cases opportunity is afforded all parties to present argument. On any matter heard by an examiner a decision should be filed within 30 days after oral argument to the commission. See, §§ 75-110, 75-119, 75-128, 84-901(2), and 84-913, R. R. S. 1943; 1 Cooper, State Administrative Law, p. 122.

Our decisions illustrate the elastic meaning of procedural fairness. Relying on a statute in force at the time, we criticized the commission for failing to listen to arguments over rate changes. Oakdale Tel. Co. v. Wilgocki, 171 Neb. 425, 106 N. W. 2d 486; Skeedee Independent Tel. Co. v. Farm Bureau, 166 Neb. 49, 87 N. W. 2d 715. Denial of oral argument in this court, however, did not violate the constitutional right to be heard in the court of last resort. Schmidt v. Boyle, 54 Neb. 387,

74. N. W. 964; In re Supreme Court Commissioners, 100 Neb. 426, 160 N. W. 737. We conclude that opportunity for oral argument is not an absolute requirement, that written argument alone is ordinarily enough for fairness. See, Federal Communications Commission v. WJR, The Goodwill Station, Inc., 337 U. S. 265, 69 S. Ct. 1097, 93 L. Ed. 1353; Dyke Water Co. v. Public Utilities Commission, 56 Cal. 2d 105, 14 Cal. Rptr. 310, 363 P. 2d 326. The generalization does not answer the immediate question: Was the refusal of the commission to hear any argument at all so unfair that the order should be reversed?

Circumstances disclosed by the transcript are relevant. The commission prescribed temporary rates April 13, 1966, three weeks subsequent to the evidentiary hearing before the examiner. The testimony had been tape recorded, and the commission listened to a playback prior to June 8, 1966. On the latter date a final order granting the application was entered, one commissioner dissenting. A month later the commission in compliance with a restraining order stayed the effective date of the rate order. On July 20, 1966, it set aside its final order, but it found that two orders for temporary rates should be reinstated. On July 26, 1966, the examiner filed his summary of the evidence, copies of which were apparently not served upon the parties. The next day the order under review was entered, one commissioner dissenting.

Although the railroads desired to keep the traffic, the proceeding involved the public interest. Existing truck rates were apparently indefensible, and the commission mastered the evidence before it acted. Under the circumstances denial of the request for oral argument was not arbitrary.

The order is affirmed.

AFFIRMED.

CARTER, J., concurring.

The carriers in this case complain of the refusal of the commission to grant oral argument before the commis-

sion on the merits of the case. This question raises an issue of considerable concern since the requirement for a hearing implies the taking of evidence and an argument on the issues if requested.

The evidence in this case was taken by an examiner for the commission. There was no argument before the examiner. It is provided by Rule 15(e), Rules of the Nebraska State Railway Commission, as follows: "Ordinarily no oral argument will be permitted at the close of a hearing. The hearing officer may request or permit such argument." By Rule 15(f) of such rules, it is provided in part: "Briefs may be required by the hearing officer or the Commission. Any party desiring to submit a brief may do so by indicating such desire at the close of the hearing." It is evident from these rules that the commission does not authorize oral argument by rule, but does authorize the filing of written briefs before the examiner and the commission by indicating a desire to do so. No such desire was manifested or request made in the instant case. Admittedly, the holding that the failure to grant an oral argument by the commission is not a violation of due process in this case is highly technical. But we must assume that oral arguments are too time consuming in handling the work of the commission and briefs are permitted on request as an alternative to oral argument.

It is noteworthy, however, that the commission provides for oral argument on motions for a rehearing by Rule 18(b)(1)(i) in part as follows: "The Commission shall hear oral argument on motions for rehearing if there is a prior request therefor in writing." While no objection can be raised to the granting of oral argument on rehearing, due process requires the granting of argument, oral or written, before decision on the merits. It is not conceivable to me that the commission has the time to hear oral arguments on rehearings but has no time to hear oral arguments on the merits of the case when they would be more helpful in avoiding error.

The granting of oral arguments on rehearing, after mistakes have possibly been made, as a substitute for an argument on the merits before decision, cannot be justified from the standpoint of due process. In matters involving complicated issues of law and fact, as in the case before us, oral arguments ought to be granted as a matter of justice and fairness. The denial of argument on the merits by courts and administrative agencies alike implies an infallibility not possessed.