Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/26/2018 09:14 AM CDT

Donald V. Cain, Jr., appellant, v. Custer County
Board of Equalization, appellee.
___ N.W.2d ___

Filed February 2, 2018.    No. S-17-370.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews Nebraska Tax Equalization and Review Commission decisions for errors appearing on the record.
2. ____: ____: ____. When reviewing a Nebraska Tax Equalization and Review Commission judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Administrative Law.** An administrative agency's decision is arbitrary when it is made in disregard of the facts or circumstances without some basis which would lead a reasonable person to the same conclusion.
4. ____. Administrative agency action taken in disregard of the agency's own substantive rules is arbitrary and capricious.
5. **Taxation: Appeal and Error.** Questions of law arising during appellate review of Tax Equalization and Review Commission decisions are reviewed de novo.
6. **Constitutional Law: Due Process.** The determination of whether the procedures afforded to an individual comport with constitutional requirements for procedural due process presents a question of law.
7. **Administrative Law: Statutes.** The meaning and interpretation of statutes and regulations are questions of law.
8. **Due Process.** Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.
9. **Administrative Law: Due Process.** A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given to litigants in a judicial proceeding.
10. **Due Process: Notice.** Due process does not guarantee an individual any particular form of state procedure. Instead, the requirements of due

process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.

11. **Taxation.** An owner is not deprived of his property without due process of law by means of taxation if he has an opportunity to question its validity or amount of such tax or assessment in some stage of the proceedings, either before that amount is finally determined or in a subsequent proceeding for its collection.

12. **Judges: Evidence.** Generally, a successor judge may not make a decision based on conflicting evidence that a predecessor judge heard.

13. **Trial: Judges: Due Process: Witnesses.** Due process entitles a litigant to have all the evidence submitted to a single judge who can see the witnesses testify and, thus, weigh their testimony and judge their credibility.

14. **Due Process.** Oral argument is not an essential element of due process.

15. **Trial: Judges: Due Process: Waiver.** A party has a due process right that a successor or substitute judge may not render a judgment for a predecessor judge who conducted the trial, but the party may waive this right and agree to have a successor judge decide the case.

16. **Taxation: Valuation: Presumptions: Evidence.** A presumption exists that a county board of equalization has faithfully performed its official duties in making a property tax assessment and has acted upon sufficient competent evidence to justify its action. The presumption disappears when competent evidence to the contrary is presented. Once the presumption is rebutted, whether the valuation assessed is reasonable becomes a question of fact based on all of the evidence.

17. **Taxation: Valuation: Proof.** The burden of showing a property tax valuation to be unreasonable rests upon the taxpayer.

18. ____: ____: ____. The taxpayer's burden to show a property tax valuation to be unreasonable is not met by showing a mere difference of opinion. Rather, the taxpayer must establish the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is a result of arbitrary or unreasonable action and not just a mere error in judgment.

19. **Taxation: Notice: Proof.** When the Tax Equalization and Review Commission hears a property tax protest under Neb. Rev. Stat. § 77-1507.01 (Reissue 2009) and performs the factfinding functions that a county board of equalization would have if the county had timely provided notice to the taxpayer, the taxpayer's burden of persuasion is by a preponderance of the evidence.

20. **Evidence: Words and Phrases.** Competent evidence is evidence that is admissible and tends to establish a fact in issue.

21. **Property: Valuation: Witnesses.** A resident owner who is familiar with his or her property and knows its worth is permitted to testify as to its value without further foundation.

22. **Taxation: Valuation: Evidence.** When an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law.

23. **Taxation: Valuation.** In tax valuation cases, actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy.

24. **Evidence: Presumptions.** A presumption may take the place of evidence unless and until evidence appears to overcome or rebut it, and when evidence sufficient in quality appears to rebut it, the presumption disappears and thereafter the determination of the issues depends upon the evidence.

25. ____: ____. A presumption is not evidence and should never be placed in the scale to be weighed as evidence.

26. **Administrative Law.** If an agency rule is but an aid to help the agency in its decision, then the rule is not binding upon the agency unless the rule confers a procedural benefit upon a party.

Appeal from the Tax Equalization and Review Commission. Reversed and remanded with directions.

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellant.

Steven R. Bowers, Custer County Attorney, and Glenn A. Clark for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

Donald V. Cain, Jr., appeals an order of the Tax Equalization and Review Commission (TERC) affirming the decision of the Custer County assessor (Assessor) regarding the 2012 taxable value of his agricultural property. Because we find error on the record, we reverse the TERC's order and remand the cause with directions to sustain Cain's property valuation protests for the 2012 tax year.

## I. BACKGROUND

Cain owns property in Custer County southwest of Broken Bow, Nebraska. The subject property encompasses 10 contiguous parcels totaling 1,093.93 acres of agricultural land exclusively used for cattle production and grazing. The land consists of rolling hills with Valentine sand and native grass. About 756 acres of the property is irrigated native grass upon which Cain grazes cattle. In 2006, Cain improved this portion of his land with center pivot irrigation systems to enhance livestock grazing. Cain does not cultivate row crops on the subject property.

In 2012, the Assessor increased the total assessed value of Cain's property from $734,968 to $1,834,925. This represented nearly a 250-percent property tax increase from the prior year, without improvements being made to the property during that time. This sharp increase was largely due to the Assessor's decision to change the classification of irrigated grassland for purposes of valuation. From 2006 to 2012, the Assessor had used a Nebraska Department of Revenue formula to adjust the value of irrigated native grassland. In 2012, the Assessor reclassified irrigated grassland by uniformly classifying all irrigated land as irrigated cropland, whether the land is used for "cultivated row crops, small grains, seeded hay, forage crops, or grasses."[1]

Cain protested. Because Cain had not been provided timely notice of the increased assessments, he was not afforded an evidentiary hearing for his protests before the Custer County Board of Equalization. Pursuant to Neb. Rev. Stat. § 77-1507.01 (Reissue 2009), Cain directly petitioned the TERC to determine the actual value of each parcel. The TERC consolidated Cain's protests and afforded him a hearing on his petitions. A divided panel of two TERC commissioners, Nancy J. Salmon and Thomas D. Freimuth, affirmed the Assessor's increased valuations of Cain's property for 2012.

---

[1] See 350 Neb. Admin. Code, ch. 14, § 002.21B (2009).

Following an appeal, in *Cain v. Custer Cty. Bd. of Equal.* (*Cain I*),[2] we found plain error and reversed, and remanded. We found the TERC's role according to the procedure provided under § 77-1507.01 was to "'determine the actual value or special value of real property for that year.'"[3] We found the TERC's decision to determine Cain's protests using the clear and convincing evidence standard provided under Neb. Rev. Stat. § 77-5016(9) (Cum. Supp. 2016) was erroneous, because such standard applied in "'all appeals'" before the TERC.[4] However, the TERC's role was not to conduct an appellate review but to perform an initial review of Cain's challenges to the increased assessments. We held the TERC's decision erroneously increased the taxpayer's burden of proof in a proceeding under § 77-1507.01. We remanded the cause with instructions for the TERC to reconsider the matter on the record using the preponderance of the evidence standard applicable to initial protests before a county board of equalization.

Freimuth resigned as a TERC commissioner in September 2015, so upon remand, the matter was assigned to another commissioner, Robert W. Hotz. Cain moved for a new hearing on the merits and an opportunity to present supplemental evidence and argue the case under the preponderance of the evidence standard. He also filed a notice of constitutional issues in which he requested the TERC to vacate the Assessor's valuations of his property and determine that the statutes he challenged were unconstitutional. The TERC denied both requests, determining that it had no authority to do anything other than follow this court's instructions on remand.

Both Hotz and Salmon reviewed the full record and, without an additional hearing, considered Cain's protests. The TERC issued a new order which reversed in part the Assessor's

---

[2] *Cain v. Custer Cty. Bd. of Equal.*, 291 Neb. 730, 868 N.W.2d 334 (2015).

[3] *Id.* at 745, 868 N.W.2d at 346.

[4] *Id.* at 748, 868 N.W.2d at 347.

determination with respect to three parcels of Cain's land, because, due to clerical errors, these parcels had been incorrectly assessed as including water wells. For the remaining seven parcels, the TERC accepted the Assessor's reasoning and affirmed the Assessor's 2012 valuations of Cain's property. The TERC's order stated, "[TERC] finds that the presumptions in favor of the initial valuations by the . . . Assessor have not been rebutted by a preponderance of the evidence . . . ."

Cain timely appeals.

## II. ASSIGNMENTS OF ERROR

Cain assigns, restated, that the TERC erred by (1) failing to conduct a hearing following remand which permitted him argument under the correct standard of review, (2) failing to hear constitutional claims and decide those issues, (3) rendering a decision not supported by sufficient evidence, (4) failing to follow remand instructions, (5) making errors of law; and (6) violating Cain's constitutional rights by failing to classify his property in a uniform and proportionate manner.

## III. STANDARD OF REVIEW

[1-5] We review decisions of the TERC for error appearing on the record of the commission.[5] When reviewing a TERC judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6] An administrative agency's decision is arbitrary when it is made in disregard of the facts or circumstances without some basis which would lead a reasonable person to the same conclusion.[7] Administrative agency action

---

[5] Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2016); *Burdess v. Washington Cty. Bd. of Equal., ante* p. 166, 903 N.W.2d 35 (2017).

[6] See *County of Douglas v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 501, 894 N.W.2d 308 (2017).

[7] *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008).

taken in disregard of the agency's own substantive rules is also arbitrary and capricious.[8] Questions of law arising during appellate review of the TERC's decisions are reviewed de novo.[9]

[6,7] The determination of whether the procedures afforded to an individual comport with constitutional requirements for procedural due process presents a question of law.[10] The meaning and interpretation of statutes and regulations are questions of law.[11]

## IV. ANALYSIS

We first address whether Cain's due process rights were violated. We then address whether the TERC erred in affirming the Assessor's valuation of Cain's property for the 2012 tax year.

### 1. No Due Process Right
### to Oral Argument

Cain assigns that the TERC violated his due process rights by not permitting him to argue how the preponderance of the evidence standard of proof applied to the adduced evidence.

[8-11] Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.[12] A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given to litigants in a judicial proceeding.[13]

---

[8] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[9] *Brenner, supra* note 7.

[10] *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017); *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

[11] *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017).

[12] *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016).

[13] See, *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997); *Geringer v. City of Omaha*, 237 Neb. 928, 468 N.W.2d 372 (1991); *Krusemark v. Thurston County Bd. of Equal.*, 10 Neb. App. 35, 624 N.W.2d 328 (2001).

Due process does not guarantee an individual any particular form of state procedure. Instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.[14] This court has stated that an owner is not deprived of his property without due process of law by means of taxation if he has an opportunity to question its validity or the amount of such tax or assessment at some stage of the proceedings, either before that amount is finally determined or in a subsequent proceeding for its collection.[15]

In Cain's petition for review, he argued that because, after remand, only one of the commissioners assigned to decide Cain's protests was present at the evidentiary hearing, the TERC failed to decide the matter by a quorum, as required under Neb. Rev. Stat. § 77-5005(2) (Cum. Supp. 2016). Cain argued this procedure violated his due process rights under Neb. Rev. Stat. §§ 77-5003(1) and 77-5015 (Cum. Supp. 2016).

[12,13] In *Liljestrand v. Dell Enters.*,[16] we found a workers' compensation claimant's due process rights were violated where the original trial judge retired during an appeal and, on remand, the case was assigned to a new judge who reviewed the record and issued an order without an evidentiary hearing. In reversing, and remanding for a new trial, we agreed with the general rule that a successor judge may not make a decision based on conflicting evidence that a predecessor judge heard.[17] We stated that "'due process entitles a litigant to have all the evidence submitted to a single judge who can see the

---

[14] *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012); *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004).

[15] *Farmers Co-op Assn. v. Boone County*, 213 Neb. 763, 332 N.W.2d 32 (1983).

[16] *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014).

[17] *Id.*

witnesses testify and, thus, weigh their testimony and judge their credibility.'"[18] We noted the issue for determination was the nature and extent of the claimant's permanent disability, which we found involved evaluating the credibility of the witnesses, and that the successor judge had no opportunity to assess credibility before deciding the case.

At oral argument in this appeal, Cain conceded he had not assigned as error the TERC's refusal to hear additional evidence. Cain did not request a new evidentiary hearing before Hotz, the successor commissioner. Cain noted our instructions on remand were limited to reconsideration on the record using the preponderance of the evidence standard (though we could not have predicted one of the two commissioners who heard the evidence would resign). Instead, Cain argued he was entitled to argue how the standard of proof applied to the evidence. Here, Cain asserts only the right to make a legal argument pertaining to an already existing record.

[14,15] We have not recognized oral argument as a freestanding procedural due process right.[19] Oral argument may be desirable but it is not indispensable, nor is it an essential element of due process.[20] The due process right protected in *Liljestrand*, that a successor or substitute judge may not render a judgment for a predecessor judge who conducted the trial, is primarily based on the need for the ruling judge to consider credibility where the evidence is in conflict.[21] A party may

---

[18] *Id*. at 248, 842 N.W.2d at 580 (quoting *Smith v. Freeman*, 232 Ill. 2d 218, 902 N.E.2d 1069, 327 Ill. Dec. 683 (2009)).

[19] *Ready Mix, Inc. v. Nebraska Railroads*, 181 Neb. 697, 150 N.W.2d 275 (1967).

[20] See *State v. Smith*, 199 Neb. 368, 259 N.W.2d 16 (1977).

[21] *Liljestrand, supra* note 16. See, also, *State ex rel. Bonner v. McSwine*, 14 Neb. App. 486, 709 N.W.2d 691 (2006); *Newman v. Rehr*, 10 Neb. App. 356, 630 N.W.2d 19 (2001), *affirmed on other grounds* 263 Neb. 111, 638 N.W.2d 863 (2002); *In re Marriage of Seyler*, 559 N.W.2d 7 (Iowa 1997).

waive this right and agree to have a successor judge decide the case.[22]

We find, by asserting only the right to make a legal argument to the decisionmaker regarding the controlling standard of evidence and by failing to request relief in the form of a new evidentiary hearing before the TERC, that Cain waived the due process rights applicable in *Liljestrand*. Cain's argument that he was entitled to argue the case following remand is without merit. Cain's due process rights were not violated.

## 2. TERC Erred in Affirming Assessor's Valuations

Cain argues the TERC erred in affirming the Assessor's valuations of his property for the 2012 tax year.

Under Neb. Rev. Stat. § 77-201(1) (Reissue 2009), all real property, unless expressly exempt, is subject to taxation and is to be valued at its actual value. As we noted in *Burdess v. Washington Cty. Bd. of Equal.*,[23] the Legislature has made agricultural and horticultural land a separate and distinct class of property for purposes of property taxation. While most real property is valued for taxation purposes at 100 percent of its actual value, which is "the market value of real property in the ordinary course of trade,"[24] the Legislature has determined that agricultural and horticultural land shall be valued at 75 percent of its value.[25]

In *Bartlett v. Dawes Cty. Bd. of Equal.*,[26] we reviewed the statutory scheme used to value agricultural land:

---

[22] *Smith, supra* note 18; *In re Marriage of Seyler*, *supra* note 21. See *Louis v. Nebraska Dept. of Corr. Servs.*, 12 Neb. App. 944, 687 N.W.2d 438 (2004).

[23] *Burdess, supra* note 5.

[24] Neb. Rev. Stat. § 77-112 (Reissue 2009).

[25] See § 77-201(2).

[26] *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 962, 613 N.W.2d 810, 817 (2000).

Agricultural land constitutes a separate and distinct class of property for purposes of property taxation.[27] Neb. Const. art. VIII requires uniform and proportionate assessment within the class of agricultural land. Agricultural land is then divided into "categories" such as irrigated cropland, dry cropland, and grassland.[28] These categories are further divided into subclasses based on soil classification.[29]

This court, in *Bartlett*, rejected the assessor's use of market areas employed in the case as violative of the statutory scheme set out by the Legislature. The evidence indicated that the market areas established by the assessor were not based on soil classification, but, instead, were based on assessment-to-sales ratios. Because the subclasses of agricultural land had to be based on soil classification, not upon where the land was located, we determined that the market areas did not constitute subclasses of agricultural land as defined by our statutes.

After our decision in *Bartlett*, the Legislature enacted Neb. Rev. Stat. § 77-103.01 (Reissue 2009),[30] which set forth that a class or subclass based on market characteristics shall be based on characteristics that affect the actual value in a different manner than it affects the actual value of properties not within the market characteristic class or subclass. The factors to consider now include parcel use, parcel type, location, geographic characteristics, zoning, city size, parcel size, and market characteristics appropriate for the valuation of such land.

The Nebraska Court of Appeals, in *Vanderheiden v. Cedar Cty. Bd. of Equal.*,[31] found market areas based upon an

---

[27] See Neb. Rev. Stat. § 77-1359 (Cum. Supp. 2016).

[28] See Neb. Rev. Stat. § 77-1363 (Cum. Supp. 2016).

[29] See *id.*

[30] See *Vanderheiden v. Cedar Cty. Bd. of Equal.*, 16 Neb. App. 578, 746 N.W.2d 717 (2008).

[31] *Vanderheiden, supra* note 30.

examination of the land for soil types, productivity, availability of water, relation to market distribution points, land use, geography, and sales history were in accordance with § 77-103.01.

Under § 77-112, actual value of real property for purposes of taxation may be determined using professionally accepted mass appraisal methods, including, but not limited to, (1) the sales comparison approach, taking into account factors such as location, zoning, and current functional use; (2) the income approach; and (3) the cost approach. This statute does not require use of all the specified factors, but requires use of applicable statutory factors, individually or in combination, to determine actual value of real estate for tax purposes.[32]

As set forth in Neb. Rev. Stat. § 77-1507.01 (Reissue 2009), "[a]ny person otherwise having a right to appeal may petition the [TERC] to determine the actual value or special value of real property for that year . . . ."

[16-19] In initial protests before the TERC, the valuation by the assessor is presumed to be correct, and the burden of proof rests upon the taxpayer to rebut this presumption and to prove that an assessment is excessive.[33] A presumption exists that a county board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its actions.[34] The presumption disappears when competent evidence to the contrary is presented.[35] Once the presumption is rebutted, whether the valuation assessed is reasonable becomes a question of fact based on all of the evidence, with the burden

---

[32] *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999).

[33] *Cain I, supra* note 2.

[34] See, § 77-5016(9); *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013); *Brenner, supra* note 7 (citing *Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal.*, 231 Neb. 653, 437 N.W.2d 501 (1989)).

[35] *JQH La Vista Conf. Ctr., supra* note 34.

of proof resting on the taxpayer.[36] The taxpayer's burden to show the valuation to be unreasonable is not met by showing a mere difference of opinion.[37] Rather, the taxpayer must establish the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is a result of arbitrary or unreasonable action and not just a mere error in judgment.[38] When the TERC hears a property tax protest under § 77-1507.01 and performs the factfinding functions that a county board of equalization would have if the county had timely provided notice to the taxpayer, the taxpayer's burden of persuasion is by a preponderance of the evidence.[39]

Thus, the ultimate issue of fact in this case is the actual value of Cain's subject property in 2012.

(a) Evidence

For the purpose of property tax assessments, the Assessor developed five market areas based on her record of property sales, soil type, availability of water, and topography, but not based on land use. Cain's property is located in market area 1, the highest valued land in the county, and has been valued as part of that market area for some time. Within each market area, the Assessor categorized agricultural property into subclasses of irrigated cropland, grassland, and dryland, which were designated as "A," "G," and "D," respectively. Property in each category was further classified by soil capability. A rating from "1" to "4" was given to each parcel, with "1" representing soil with the highest productivity rating and "4" representing the lowest quality soil. Under this framework, for example, category "4A" was irrigated cropland with poor soil

---

[36] See *id.*

[37] See *id.* (citing *Bumgarner v. County of Valley*, 208 Neb. 361, 303 N.W.2d 307 (1981)).

[38] See *id.*

[39] See *Cain I, supra* note 2.

and category "4G" was grassland with poor soil. But property classified as "4A" or "4G" was valued differently depending upon the market area in which it was located.

Market areas 1, 2, and 3 are most relevant. Market area 1 primarily comprised the lower southeastern portion of the county, which contained soil suitable for crop production. Market area 1 contains most of the farm activity in the county and contains land with silt loam and flat row crop production. Market area 2, characterized as the Sandhills region, primarily comprised the northwestern and northern parts of the county. Market area 3 was a transitional area between market areas 1 and 2.

In 2012, the Assessor designated the nonirrigated portions of Cain's property as grassland and valued such land between $495 and $505 per acre, depending on soil capability. The Assessor classified the irrigated portions of Cain's property as irrigated cropland, or "A." This meant Cain's irrigated land was valued between a range of "1A" and "4A," or between $2,100 and $2,930 per acre in market area 1. The Assessor placed almost 600 acres of Cain's land into the "4A" category, poor quality irrigated cropland valued at $2,100 per acre. The same category was valued per acre at $450 in market area 2 and $870 in market area 3. The remaining 100-plus irrigated acres were valued between $2,105 and $2,930.

At the evidentiary hearing, Cain adduced evidence that the Assessor inequitably classified the irrigated portions of his land, because the valuations did not take into consideration that his property was not comparable to irrigated cropland in terms of soil type, topography, and land use. Cain irrigated only native grasses. In 2006, he drilled two wells for pivot irrigation to combat dust from a feedlot south of his property. In all, his property had three wells and seven irrigation pivots. He testified he used irrigation conservatively to avoid erosion. Cain submitted affidavits stating his opinion that the taxable value of his property for the 2012 year was $778,625, or an average of $711.77 per acre.

Cain and his expert witness, Cyril Thoene, both testified the best and most productive use of Cain's property was for cattle grazing and not for row crop production, because the soil was mostly Valentine sand. Thoene presented a county soil map which showed that a band of Valentine sand ran southeast from the Sandhills region to an area just south of Broken Bow, where Cain's property was located. The land containing Valentine sand is fragile with little fertility. The land has slopes, is highly erodible, and overall is not suitable for farming.

In 2010, Thoene, a certified general appraiser, appraised Cain's property and determined that approximately 95 percent of the soil was rolling Valentine sand with steep slopes. He testified that Valentine soils are some of the poorer land that one could farm. He opined that Cain's property was most comparable to property in market area 2, the lowest valued agricultural land in the county. He stated that but for the presence of irrigation systems, Cain's property would be identical to the Sandhills grassland found in market area 2. Because of its proximity to Broken Bow, however, Thoene believed the property should be valued between the 2012 values for "4A" property in market area 2 ($450 per acre) and market area 3 ($870 per acre).

In completing his appraisal report, Thoene considered each of the three appraisal methods—the sales comparison approach, the income approach, and the cost approach—and determined a value estimate based upon the Uniform Standards of Professional Appraisal Practice. Thoene said that the uniqueness of Cain's irrigated grassland made it difficult to find comparable sales. He kept records of every sale in the county and had not seen any recent sales of irrigated grassland in Custer County. But he found comparable sales in 2010 outside the county where the property owner had installed pivot irrigation but used the land for livestock grazing. Thoene determined that those properties sold for about one-quarter to one-third of the selling price for average- to high-quality irrigated cropland. Thoene stated these market findings supported his

opinion that Cain's property should be valued between $450 and $870 per acre.

The Assessor explained how she classified Cain's property. She testified that even though Cain's property contained Valentine sand, the property was not equivalent to property in market area 2, because Cain's soil had "a little loam in it." She determined this by using a Department of Revenue soil chart not offered into evidence. She explained her valuations accounted for soil types through market sales and the soil capability subclassifications.

The Assessor admitted that Cain's property was valued the same as other irrigated cropland in market area 1, regardless of its topography and whether it was suitable for crop production. She conceded that Cain's property had poor quality soil and that if irrigation systems were not present on the land, his property would be classified as grassland and valued between $495 to $510 per acre.

The Assessor explained her property valuations were based upon state statutes and Department of Revenue rules and regulations and that she lacked authority to make adjustments for irrigated grassland. She relied upon the Department of Revenue's regulation, 350 Neb. Admin. Code, ch. 14, § 002.21B, which defines irrigated cropland as all land where irrigation is used, whether for "cultivated row crops, small grains, seeded hay, forage crops, or grasses." She admitted, however, that from 2006 to 2012, she used a formula to adjust the value of irrigated grassland. She said both the county and the Department of Revenue were aware of her practice to adjust valuations for irrigated grassland. She conceded that the Department of Revenue did not require her to discontinue making adjustments for irrigated grassland.

In response to a question posed by Freimuth, the Assessor admitted the actual value of Cain's property could be somewhere between the value of property in market areas 2 and 3:

> Q Do you agree with . . . Thoene's position that it's somewhere between Market Area 2 and Market Area 3,

somewhere between 450 and 870? If you were to say, from a (indiscernible) standpoint or similarity standpoint, would you agree with . . . Thoene that it's somewhere between 450 and 870, Market Area 2, Market Area 3 valuation?

A It could possibly be. I would more soon use a formula because there's going to be other irrigated grass. It's just not one person that this would envelop.

### (b) Resolution

[20-22] Competent evidence is evidence that is admissible and tends to establish a fact in issue.[40] A resident owner who is familiar with his or her property and knows its worth is permitted to testify as to its value without further foundation; this principle rests upon the owner's familiarity with the property's characteristics, its actual and potential uses, and the owner's experience in dealing with it.[41] When an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law.[42]

The burden of persuasion imposed on Cain is not met by showing a mere difference of opinion unless it is established by a preponderance or greater weight of the evidence that the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.[43] Beginning with a presumption that the Assessor faithfully performed her

[40] *TJ 2010 Corp. v. Dawson Cty. Bd. of Equal.*, 22 Neb. App. 989, 866 N.W.2d 93 (2015).

[41] *Darnall Ranch v. Banner Cty. Bd. of Equal.*, 276 Neb. 296, 753 N.W.2d 819 (2008); *Brenner, supra* note 7.

[42] *JQH La Vista Conf. Ctr., supra* note 34.

[43] See, *Cain I, supra* note 2; *JQH La Vista Conf. Ctr., supra* note 34.

official duties in making an assessment and acted upon sufficient competent evidence, we must determine in the instant case if there is competent evidence to the contrary such that the presumption disappeared.

We determine that the TERC erred in disregarding Cain's testimony that, in his opinion, the subject property had an actual value of approximately $711.77 per acre. This testimony constituted competent evidence under the rule that an owner who is familiar with his property and knows its worth is permitted to testify as to its value.

We also determine that the TERC erred in disregarding the testimony of Thoene, whose expertise as a real estate appraiser was demonstrated by the evidence. Thoene testified that he used the sales comparison approach to determine his estimated value of between $450 and $870 per acre. His appraisal report, which was received into evidence, indicated that Thoene utilized all three mass appraisal methods and that those methods support his estimated value. His appraisal was therefore competent evidence which was entitled to weight in determining the actual value of the subject property.

[23] We have recognized that in tax valuation cases, actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy.[44]

[24,25] The record shows the TERC used an erroneous evidentiary standard in determining Cain's protests. The TERC found that "the presumptions in favor of the initial valuations by the County Assessor have not been rebutted by a preponderance of the evidence." However, as we have previously held, the presumption of validity afforded to the Assessor's valuation disappears once competent evidence to the contrary is presented.[45] A presumption may take the place of evidence

---

[44] *Brenner, supra* note 7.

[45] See, *JQH La Vista Conf. Ctr., supra* note 34; *Brenner, supra* note 7; *TJ 2010 Corp., supra* note 39; *Zabawa v. Douglas Cty. Bd. of Equal.*, 17 Neb. App. 221, 757 N.W.2d 522 (2008).

unless and until evidence appears to overcome or rebut it, and when evidence sufficient in quality appears to rebut it, the presumption disappears and thereafter the determination of the issues depends upon the evidence.[46] A presumption is not evidence and should never be placed in the scale to be weighed as evidence.[47] And, once the presumption of validity disappears, the taxpayer bears the burden of showing the county's valuation is unreasonable.[48]

The opinions of Cain and Thoene that the actual value of the subject property was approximately 60 percent lower than the 2012 valuation determined by the Assessor constituted competent evidence which caused the presumption of validity afforded to the Assessor's valuation to disappear. Therefore, the reasonableness of the Assessor's valuation was a question of fact based upon all the evidence presented, and Cain had the burden of showing such valuation to be unreasonable.

Most of Cain's and Thoene's testimony about the unique qualities and value of Cain's land was unrefuted, except for the Assessor's competing position that all irrigated property must be valued as irrigated cropland.

The regulation the Assessor relied on states: "Irrigated Cropland includes all land where irrigation is used, whether for cultivated row crops, small grains, seeded hay, forage crops, or grasses."[49] This definition of "[i]rrigated [c]ropland" is a subdefinition of "[c]ropland."[50] The purpose of this definition "is to establish *guidelines* for the assessment of agricultural land."[51] This type of agency rule is merely an aid, and not a

---

[46] See, *First Nat. Bank in Kearney v. Bunn*, 195 Neb. 829, 241 N.W.2d 127 (1976); *In re Estate of Drake*, 150 Neb. 568, 35 N.W.2d 417 (1948).

[47] *Bohmont v. Moore*, 138 Neb. 784, 295 N.W. 419 (1940).

[48] See *id*.

[49] 350 Neb. Admin. Code, ch. 14, § 002.21B.

[50] *Id.*, § 002.21.

[51] *Id.*, § 001.01 (emphasis supplied). See Neb. Rev. Stat. § 77-1330(1) (Cum. Supp. 2016).

command. If an agency rule is but an aid to help the agency in its decision, then the rule is not binding upon the agency unless the rule confers a procedural benefit upon a party.[52] The definitional guideline of "[i]rrigated [c]ropland"[53] here provides no procedural benefit and therefore is not mandatory.

The Assessor admitted she was not instructed to utilize this regulation and that she had not adhered to it from 2006 to 2012. Thus, the Assessor's premise about a legal requirement for uniform classification of irrigated land is not persuasive.[54] In truth, under §§ 77-103.01, 77-112, and 77-1363, assessors are not limited to a single method of determining the actual value of property for tax purposes. Rather, assessors are charged with a duty to consider a wide range of relevant factors in order to arrive at a proper assessment which does not exceed actual value.

Based on our review of the record, we find Cain proved by the greater weight of the evidence that his irrigated grassland property was not comparable to the vast majority of the high quality farming land within market area 1 and was more comparable to valuations placed on other similar property in market areas 2 and 3, as well as Cain's own nonirrigated property. As a result, we find the TERC erred by failing to find Cain carried his burden to prove by a preponderance of the evidence that the Assessor's value of his irrigated grassland property for the 2012 tax year was grossly excessive and the result of arbitrary or unreasonable action.

### 3. Remaining Assignments of Error

Because we have determined that the TERC's order should be reversed, we do not address Cain's remaining assignments

---

[52] See *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998).

[53] See 350 Neb. Admin. Code, ch. 14, § 002.21B.

[54] See *Beynon Farm Products v. Bd. of Equalization*, 213 Neb. 815, 331 N.W.2d 531 (1983).

of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[55]

## V. CONCLUSION

We conclude that Cain has shown by a preponderance of the evidence that the valuation of the property at issue for the tax year 2012 is $870 per acre, for a total of $951,719.10. We remand the matter to the TERC with directions that it direct the Assessor to set the valuation of the property at such amount for the tax year 2012, upon which amount taxes for such year shall be determined and paid.

Reversed and remanded with directions.

Wright, J., not participating in the decision.

_____

[55] *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017).