IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

DODGE CTY. BD. OF EQUAL. V. THE KROGER COMPANY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DODGE COUNTY BOARD OF EQUALIZATION, APPELLANT,

V.

THE KROGER COMPANY, APPELLEE.

Filed April 23, 2024.    No. A-23-268.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Pamela Lynn Hopkins, Dodge County Attorney, for appellant.

Adam J. Prochaska, Sami D. Segelke, and Timothy L. Moll, of Rembolt Ludtke L.L.P., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

The Nebraska Tax Equalization and Review Commission (TERC) reversed the decision of the Dodge County Board of Equalization (the Board) upholding the assessed value of The Kroger Company's grocery store for the 2020 and 2021 tax years. For both years, TERC reduced the value of Kroger's property. The Board now appeals TERC's decision. Based on the reasons that follow, we affirm.

### BACKGROUND

Kroger owns a 5.07-acre parcel of real estate improved with a 54,029 square foot grocery store located in Fremont, Dodge County, Nebraska. Kroger protested the assessed property valuations set by Dodge County for the 2020 and 2021 tax years to the Board. The Board upheld the assessed values of $4,466,495 for tax year 2020 and $4,722,962 for tax year 2021. Kroger

- 1 -

appealed the Board's decisions to TERC, arguing that the assessed values exceeded the actual values of the property. The appeals were consolidated for hearing.

Peter Helland, an expert witness retained by Kroger, testified at the hearing. At the time of the hearing, Helland had 17 years of experience as a real estate appraiser and had completed coursework through the Appraisal Institute where he earned a Member of Appraisal Institute (MAI) designation and "AI-GRS" designation, the latter being a designation reserved for "review work and review appraisal." Helland was licensed in eight states and had appraised over 200 "big box" retail locations. Helland appraised the property at issue for the 2020 and 2021 tax years and his report was received into evidence.

Helland described the building on Kroger's property as a grocery store or supermarket with a traditional layout. It was built in 1990, and most recently updated in 2014. He testified that he physically inspected the premises and took pictures of the property, which were included in his report. He also evaluated the highest and best use of the property, which involved considering legal permissibility, physical possibility, financial feasibility, and maximal productiveness of the property. Helland concluded that the highest and best use of the property was the existing retail property use.

Prior to determining the market value of the physical building, Helland valued the underlying land. Based on sales of comparable land, Helland determined that the land component of the property had a value of $1,100,000. Using this land value, Helland then considered the value of the entire property using the cost approach, the sales comparison approach, and the income capitalization approach.

Regarding the cost approach analysis, Helland estimated the "replacement cost new" for the improvements on the property using the Marshall Valuation Service cost guide, a nationally recognized publication containing construction costs. He further adjusted for depreciation, taking into account physical deterioration, functional obsolescence, and external obsolescence. He used the economic age/life method based on the improvements' age and use, which he found more applicable than an alternative method called the breakdown method. He concluded that the depreciated replacement cost was just over $1,400,000, resulting in a total value (including the $1,100,000 land value) of $2,500,000 for 2020.

Helland followed the same general cost approach analysis for 2021 but used the Marshall Valuation Service adjusted base cost for 2021, added an additional year of depreciation to the age/life method, and did not show entrepreneurial incentive or entrepreneurial profit because there was no construction being done due to the impact of the COVID-19 pandemic as of the valuation date. He concluded that the improvements had a depreciated value of just over $1,200,000, resulting in a total value (including the $1,100,000 land value) of $2,300,000. Helland testified that his cost approach analyses for 2020 and 2021 were prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP).

Helland next considered the sales comparison approach, which is derived by analyzing closed sales, listings, or pending sales of properties that are similar to the subject property. He identified ten comparable sales in the Omaha market and outlying areas, seven of which were fee simple in nature, and three of which were leased-fee sales. He explained that leased-fee sales are only included when he has knowledge of the lease terms so he can make the necessary adjustments. After Helland identified his comparable sales, he applied appropriate adjustments to all ten sales

for both 2020 and 2021. He testified that the primary difference between 2020 and 2021 was market conditions, including the decrease in the number of buyers in the market for big box retail. Using the sales comparison approach, Helland determined that the value of the property in 2020 was $2,400,000, and the value of the property in 2021 was $2,200,000. Helland's sales comparison approach analyses for 2020 and 2021 were prepared in accordance with USPAP standards.

Finally, Helland considered the income capitalization approach, which reflects the property's income-producing capabilities. He analyzed six market comparable leased properties in the Omaha area and adjacent markets, all of which he had the lease data necessary to make appropriate adjustments. Adjustments were made to factor in differences in size, age, condition, quality, and other characteristics. Like the sales comparison approach, the difference in value between 2020 and 2021 under the income capitalization approach was the result of lower demand in 2021 due to COVID-19, which caused the rental rate to drop and the vacancy rate to increase. Using the income capitalization approach, Helland determined the value of the property was $2,400,000 in 2020 and $2,200,000 in 2021. Helland's income capitalization approach analyses for 2020 and 2021 were prepared in accordance with USPAP.

Helland reconciled all three approaches to value to arrive at his conclusion of overall value for 2020 and 2021. He explained the cost approach was given the least weight in his analysis because it did not reflect what was actively happening in the market. He gave primary consideration to the sales comparison approach because there were ten comparable sales, "seven of which were fee simple in nature, three of which we had the lease data to adjust for to the fee-simple terms." He also gave "notable consideration" to the income-capitalization approach because he had an abundance of data available and the two values under that approach were the same as the values using the sales comparison approach. Helland's final valuation of the property was $2,400,000 for 2020, and $2,200,000 for 2021.

Helland further testified that he reviewed the County's evidence regarding sales comparisons and the adjustments the County made. He testified that all the adjustments were "theoretical" and "based in what we know not to be true."

After Kroger concluded its case-in-chief, counsel for the Board made a motion for summary judgment alleging Kroger failed to present evidence to show the Board's valuations were "arbitrary and unreasonable." TERC denied the motion.

The Board subsequently presented its evidence, including the testimony of Mitch Hart, the head appraiser for Dodge County. Hart held the State of Nebraska Assessor's Certificate, but he was not a licensed appraiser. There were three assistant county appraisers who worked with him. Hart was directly involved in the assessment of the Kroger property for 2020 and 2021.

Hart testified it is standard practice for a county appraiser to go to the property being appraised, but the appraiser was not always allowed to see inside the building or able to talk to someone with knowledge of the property. The county appraiser does "exterior measurement, reviews, and things like that to get an idea of what the current condition of the building is." Hart testified that the county appraiser then inputs the data he or she has into a computer-aided mass appraisal (CAMA) system and uses the CAMA system manuals to put a quality or grade on a property. At the time of the hearing, Dodge County utilized Vanguard for its CAMA system, but for 2020 and 2021, the county used a different system called Orion. Once the property information is input into the CAMA system, the county appraiser uses the cost approach to set the initial value.

The appraiser then makes adjustments based on the market to determine the values that are sent out to taxpayers. He or she looks at a group of commercial sales, finds the median sales ratio, and makes market adjustments based on what all the sales in the area are indicating. The commercial sales are not looked at individually, but as a whole; they are not broken down by size or location. Once that step is complete, the county appraiser looks at commercial sales in Fremont as a whole from the most recent three years to confirm the value is not unreasonable. The value is then sent to the State for approval and after being approved, it is sent to the taxpayer.

Hart further explained that the County uses the depreciation percentage set in the CAMA system, which accounts for physical depreciation; it does not factor in any functional or economic obsolescence. Hart testified that the County does not make any adjustments for functional or economic obsolescence.

With respect to the property at issue, Hart was the one who set the assessed values for 2020 and 2021, which the Board upheld. He testified that he followed the procedures as outlined in his testimony above. He did not do an on-site review of the property in either 2020 or 2021 and he did not know the last time an on-site review had been completed. Hart explained that in 2020, TERC ordered a 37 percent increase in value on all commercial property in Fremont. He testified that after being notified of the 2020 value, Kroger contacted him. He then evaluated the property record card to determine whether the increase was warranted and subsequently rolled back the property's value to its 2019 value. Hart testified that for 2021, a 6 percent increase in value was added to all properties that were rolled back the year before because commercial sales in Fremont indicated the market was increasing. The six percent increase was on improvements; other properties received an 18 percent increase.

Hart was also questioned as to why the values adopted by the Board varied significantly from the assessed values found on the property record cards submitted into evidence. He explained that the values on the property record cards were the assessed values, which were not values that were used for the 2020 and 2021 tax years. Hart stated that the discrepancies were due to a software conversion from the Orion system to the Vanguard system, at which time the values were brought over correctly from the previous system, but not all the components transferred correctly. This resulted in an assessed value found on the property record cards, which was what the conversion components were saying the value should be, but that was not the value that was sent out to the taxpayer.

Hart was also asked if the property record card for 2020 submitted into evidence showed how the Board reached its determined value of $4,466,496. He stated it did not. Hart was then asked if there was any exhibit in evidence that would show the basis for the Board's value of the property for either 2020 or 2021. He stated that there was not any evidence. Hart could only state that the Board determined values for both 2020 and 2021 were derived from the Orion CAMA system with market adjustments.

After the hearing, TERC entered an order reversing the decision of the Board. TERC found there was competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determination. It further found that there was clear and convincing evidence that the Board's decision was arbitrary or unreasonable. TERC agreed with Helland's appraisals and set the value of the property at $2,400,000 for 2020, and $2,200,000 for 2021.

## ASSIGNMENTS OF ERROR

The Board assigns that TERC erred in (1) finding that Kroger presented competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determination, as there was no clear and convincing evidence that the Board's decision was arbitrary, unreasonable, or capricious, (2) finding there was competent evidence to set Kroger's taxable value at $2,400,000 for 2020, and $2,200,000 for 2021, and (3) setting the taxable value of Kroger for 2020 at $2,400,000, and for 2021 at $2,200,000, as it was arbitrary, capricious, and unreasonable.

## STANDARD OF REVIEW

Appellate courts review decisions rendered by TERC for errors appearing on the record. *Cain v. Custer Cty. Bd. of Equal.*, 315 Neb. 809, 1 N.W.3d 512 (2024). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Competent evidence is evidence that is admissible and tends to establish a fact in issue. *Id.*

Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion. *Id.*

## ANALYSIS

### PROTESTS AND APPEALS OF APPRAISALS

With exceptions for agricultural and horticultural land, Neb. Rev. Stat. § 77-201(1) (Reissue 2018) states that all real property "shall be valued at its actual value." Neb. Rev. Stat. § 77-112 (Reissue 2018) defines actual value as "the market value of real property in the ordinary course of trade." Generally, a county assessor may determine actual value using (1) the sales comparison approach under Neb. Rev. Stat. § 77-1371 (Reissue 2018), (2) the income approach, (3) the cost approach, or (4) any "professionally accepted mass appraisal method." § 77-112.

Property owners may protest a county assessor's determination of actual value under these methods to the county board of equalization. *Lincoln Cty. Bd. of Equal. v. Western Tabor Ranch Apts.*, 314 Neb. 582, 991 N.W.2d 889 (2023). The county board of equalization's decision may then be appealed to TERC. *Id.* On appeal, there is a presumption in favor of the county board of equalization.

When reviewing appeals from decisions of county boards of equalization, TERC must follow the standard set out in Neb. Rev. Stat. § 77-5016(9) (Reissue 2018), which provides:

> In all appeals, excepting those arising [from a county tax levy], if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, [TERC] shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.

The Nebraska Supreme Court has interpreted this language to create a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. *Lincoln Cty. Bd. of Equal. v. Western Tabor Ranch Apts., supra.* The presumption disappears when there is competent evidence adduced on appeal to the contrary. *Id.*

Once competent evidence is adduced to show that the order, decision, determination, or action appealed from is incorrect, the property owner retains the burden to show by clear and convincing evidence that the county board's decision was arbitrary or unreasonable. *Id.* A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion. *Id.* A decision is unreasonable only if the evidence presented leaves no room for differences of opinion among reasonable minds. *Id.*

### PRESUMPTION OF VALIDITY AND BURDEN OF PROOF

The Board first assigns that TERC erred in finding that Kroger presented competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determination, as there was no clear and convincing evidence that the Board's decision was arbitrary, unreasonable, or capricious. Based on the standards set out above, we must first determine whether TERC erred in finding that Kroger presented competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient evidence to make its determination.

Competent evidence is evidence that is admissible and tends to establish a fact in issue. *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018). When an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law. *Id.*; *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013). In *JQH La Vista Conf. Ctr.*, the court noted that the appraisals offered by the taxpayer were prepared in conformity with the uniform standards of practice and provided three alternative valuations of the property at issue, using each of the three methods provided for by § 77-112. The court concluded that the taxpayer had overcome the presumption of validity under § 77-5016(9).

In this case, Kroger presented the appraisal and testimony of Helland, a certified general appraiser, who had 17 years of experience in commercial real estate appraising, held an MAI designation, and had appraised over 200 "big box" stores. His appraisal on the property was prepared in conformity with the USPAP. Helland's appraisal for both years considered the three appraisal methods set out in § 77-112 - cost approach, sales comparison approach, and income capitalization approach. Helland explained the three approaches and testified that after considering the three approaches to valuation, the cost approach had the least impact upon the reconciled value because it did not reflect what was actively happening in the market. He stated that he gave primary consideration to the sales comparison approach and "notable consideration" to the income-capitalization approach, noting that the two values under that approach were the same values as those under the sales comparison approach.

We conclude that the testimony and appraisal report of Helland was competent evidence to rebut the presumption of validity in favor of the Board. Helland's appraisals for both years at

issue were prepared in conformity with the uniform standards of practice and provided three alternative valuations of the property using the three methods provided for by § 77-112. See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal., supra.* Accordingly, TERC did not err in finding that Kroger had provided competent evidence sufficient to rebut the presumption of validity.

We next consider whether TERC correctly found that the Board's valuations of Kroger's property for 2020 and 2021 were arbitrary or unreasonable. Once the challenging party overcomes the presumption of validity by competent evidence, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all of the evidence presented. See *Lancaster Cty. Bd. of Equal. v. Moser*, 312 Neb. 757, 980 N.W.2d 611 (2022)*.* The burden of showing that a valuation is unreasonable or arbitrary rests upon the taxpayer on appeal from the action of the board. *Id.* And the burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the property, when compared with valuations placed on other similar property, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment. *Id.*

As previously discussed, Helland was an experienced appraiser of commercial real estate, and his appraisal of the subject property was prepared in conformity with the USPAP. He valued the property for both 2020 and 2021 using the three appraisal methods set out in § 77-112. Helland concluded that the sales comparison approach and the income capitalization approach resulted in the most reliable values. Both of those methods use comparable properties and comparable sales in the area to determine the value of the subject property. Helland concluded that Kroger's property should be valued at $2,400,000 for 2020, and $2,200,000 for 2021. These values differed significantly with the Board's assessed values of $4,466,495 for 2020, and $4,722,962 for 2021.

Hart, who was directly involved in the assessment of the property for 2020 and 2021, testified there was no exhibit in evidence that showed the basis for the Board's value of the property for either 2020 or 2021. Hart could only state that both the 2020 and 2021 values set by the County were derived by the Orion CAMA system with market adjustments. He testified that in assessing the subject property, as the County does for all assessments, he made adjustments based on the market to determine the values sent out to Kroger. Hart looked at a group of commercial sales, found the median sales ratio, and made market adjustments based on sales in the area. The commercial sales were not looked at individually, but as a whole; they were not broken down by size or location. Once that step was complete, Hart considered commercial sales from the most recent three years to confirm his values were not unreasonable. Hart also testified that the CAMA system takes physical depreciation into account, but does not factor in any functional or economic obsolescence, and the County does not make any adjustments for functional or economic obsolescence. Further, Hart testified that he did not do an on-site review of the property for either year.

Helland testified that he reviewed the County's evidence regarding sales comparisons and the adjustments the County made. He testified that all the adjustments were "theoretical" and "based in what we know not to be true."

We conclude that TERC did not err in finding that the Board's valuations of Kroger's property for 2020 and 2021 were arbitrary or unreasonable. As TERC stated in its order, "no testimony was provided to explain the basis for the County Board's valuation or demonstrate why

- 7 -

the County Board's valuation would be more appropriate." Hart failed to explain, and no other evidence was presented, to show the basis for the Board's 2020 valuation of $4,466,495, and 2021 valuation of $4,722,962. There was little to no evidence presented by the Board as to how the CAMA system works or how it was utilized here. There was also an insufficient explanation of market adjustments and specifics on how depreciation was figured. In summary, there was an inadequate record of how the Board's valuation was determined as compared to the well documented valuation provided by Kroger.

Accordingly, the Board's first assignment of error fails.

## TERC'S ASSESSMENT ON APPEAL

The Board next assigns that there was not competent evidence to set Kroger's taxable value at $2,400,000 for 2020, and $2,200,000 for 2021, and that these values were arbitrary, capricious, and unreasonable. Once TERC determined the Board's valuations for 2020 and 2021 were arbitrary and unreasonable, it then had to reach a determination of the taxable value of the property for those years. As previously stated, when an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law. *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018). TERC accepted Helland's appraised value of the property for both years. Therefore, TERC's decision to set the taxable value of the property at $2,400,000 for 2020 and $2,200,000 for 2021 is supported by competent evidence. The Board's final two assignments of error fail.

## CONCLUSION

We conclude that TERC did not err in its determination that there was competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determination and that the Board's decision was arbitrary or unreasonable. We further conclude TERC did not err in setting the taxable value of the property at $2,400,000 for 2020 and $2,200,000 for 2021. Accordingly, TERC's order is affirmed.

AFFIRMED.