HAZEL DEVORE, APPELLANT, V. BOARD OF EQUALIZATION
ET AL., APPELLEES.

13 N. W. 2d 451

FILED MARCH 3, 1944. No. 31728.

*W. A. Ehlers,* for appellant.

*Walter G. Huber, contra.*

Heard before SIMMONS; C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is an appeal from the district court for Washington county from an order fixing the assessment valuation of plaintiff's properties, praying for cancellation of the valuations fixed thereon for the year 1942, and that the district court determine and fix the fair and reasonable assessment valuations on such real estate.

On June 11, 1942, the plaintiff filed her complaint with the board of equalization of Washington county, Nebraska; in July, 1942, a hearing was had before the board. On August 10, 1942, plaintiff's claim for correction of assessment

for the year 1942 was denied. The complaint included lots 13, 14, 15 and 16, in block 1, village of Kennard. The lots were assessed at $50 each, a total of $200. The value of the improvements, consisting of a story and a half frame building, modern, about 20 years old, was fixed at $2,150, making a total assessment of $2,350. No objection was made to the assessment on the lots. Plaintiff asked that the assessment on the improvements be changed to $750, making a total assessment of $950.

Complaint was made with reference to lots 7, 8 and 9, in block 9, First Addition to the village of Kennard. The lots were assessed at $150, to which there was no objection. The improvements thereon were assessed at $450, making a total of $600. Plaintiff placed the value of the improvements at $150; a total valuation of $300. The improvements consisted of a one-story, reconstructed dwelling, with electric lights and an outside water hydrant. Complaint was made with reference to lot C in J. C. Neal's subdivision in the village of Kennard. The lot was assessed at $50, the improvements thereon at $1,100, a total of $1,150. No objection was made to the lot assessment. The value for assessment purposes claimed by plaintiff for the improvements was $400, a total of $450. This property was an old reconstructed frame dwelling on the lot, with five adjoining lots. Complaint is made with reference to lots E, F, G, H and I, in J. C. Neal's subdivision in the village of Kennard, assessed at $250. Plaintiff claimed the value for assessment purposes to be $150.

For convenience the properties above described will be referred to as Nos. 1, 2, 3 and 4, respectively.

The trial court assessed property No. 1, with lots and improvements, at $1,500; property No. 2, consisting of three lots at $150, and the value of the improvements at $300, or a total of $450; property No. 3, the lot at $50 and the improvements at $800, total $850, and property No. 4, consisting of five lots, at $40 each or a total of $200. From this decree the plaintiff appeals.

The plaintiff predicates error in that a request was made

by defendant's counsel to have the trial judge view the premises, to which plaintiff's counsel objected, on the ground that there was no showing that the court would be better informed as to property values in a small town, outside his own town; that the witnesses who have testified and will testify will give all the needed testimony, and that it is an unfair element being injected into the trial. There is nothing in the record to show that the trial judge ever viewed the premises. Plaintiff's contention is without merit. Obviously, the court abided by the objection made by her counsel, and she is in no position to predicate error on the court's not viewing the premises. It would be discretionary on the court's part, in any event.

Plaintiff further predicates error in that the court failed to admit in evidence the decree of the district court in 1941, fixing the assessed values of the separate pieces of property, of which complaint was made. The defendant's counsel objected, for the reason that it was immaterial, so far as fixing the value of the property in question for 1942. This objection was sustained.

Section 77-1601, Comp. St. Supp. 1941, provides in part: "All real property in this state subject to taxation shall be assessed on the first day of April, 1933 and 1934 and every second year thereafter, which assessment shall be used as a basis of valuation for taxation until the next regular assessment."

In *Swanson v. Board of Equalization,* 142 Neb. 506, 6 N. W. 2d 777, this court held: "Section 77-1702, Comp. St. 1929, authorizes the board of equalization to correct evident errors of assessment or apparent gross injustice in overvaluation or undervaluation of real property, at any of its annual meetings, whether such errors or injustice be due to some act of the assessor or to that of the board itself. The act is remedial and intended to reach cases where, because of evident errors of assessment, or because of overvaluation or undervaluation, a taxpayer would pay more or less than his just share of taxes." Section 77-1702, *supra,* provides that the county board of equalization shall at its

meeting in 1912 and every second year thereafter "equalize the valuation of real property of the county by raising the valuation of such tracts and lots as are assessed too low, and lowering the valuation of such tracts and lots as are assessed too high."

From the foregoing statutes, it appears that the legislature provided that the valuation for property for assessment purposes for each year could be different, according to the circumstances arising within the purview of the statutes concerned. 1942 was a regular year for assessment under the Nebraska statutes; presumably, the 1941 assessment was based on the 1940 valuation. Plaintiff's contention is without merit.

A witness testifying for the plaintiff, a dealer in real estate, had listed the properties, heretofore described. He stated that he was unable to obtain buyers for any of them; that property No. 1 was listed at $1,200, and he was unable to sell it for $1,000; that the property consisted of an eight or nine-room house in fair condition, in need of a new roof, with fair guttering, a part of the stucco off and in bad condition; that there was a cess pool connecting with the property. The witness described property No. 2 as a small house in poor condition and empty, and property No. 3 as a two-story house in poor condition. He could not obtain a buyer for this property at $400 or $500; he had not sold property in Washington county. As finally summed up, his testimony on value fixed the No. 1 property at $1,000; No. 2 at $275; No. 3 at $500, and No. 4 at $100 to $250.

The renter of property No. 1, who testified for plaintiff, paid $15 a month and subleased a part of the premises. It had been offered to him for $800, but it was too large for his small family and not in good repair. He placed the value of this property at $800; the value of property No. 2 at $275; of No. 3 at $500, and No. 4 from $100 to $150. Plaintiff's attorney testified to the value of property No. 1, placing it at $800; of property No. 2 at $275, of No. 3 at $500, and No. 4 from $100 to $150.

For the defendant, the secretary and treasurer of a co-

operative credit association, an insurance man, with his place of business in the village for eight years past, testified he had knowledge of the rental values of residential properties and was acquainted with property No. 1; that the fair rental value thereof was $20 a month. He estimated the tax rate at $50 a year, the insurance rate with his company at 50 cents a hundred. He testified that the demand for such property was limited; he fixed its value at $1,500. Property No. 2 he designated as a good little home, with two out-buildings, an old barn and a shack. Based on a six-dollar rental a month, he fixed the value at $480; property No. 3 at a rental value of $9 a month. He stated the house on that property was in good condition and he placed the value at $850; the No. 4 property he valued at $200. He did not own property in the village, but his wife owned a piece of property and consulted with him about it.

Another witness for defendant, a resident of the village for 20 years, identified a photograph of the house on property No. 1 and placed its value at $2,000; of property No. 2 at $400; No. 3 at $900, and the vacant lots at $250. He testified that he placed a value of $2,000 on property No. 1 for the reason that it would be worth such an amount for salvage, and to build an ordinary house on the lots and utilize the material in the building to advantage; that it could be wrecked for $200 or $300; that the building was in fair condition; the stucco was off the house in places, and the cornice was down. He testified that property No. 2 was an old house, in a run-down condition. He was unable to fix rental value from his own personal knowledge, but was acquainted with the No. 1 property, lived close to it, and had seen it quite often.

The former owner of the No. 1 property testified that the house had an A-1 foundation, a full basement, stone pillars built up from the basement; the lower floor finished with oak, a beamed ceiling and built-in kitchen cupboards, and was modern throughout; that one room was 14 or 15 by 32 feet; another 16 by 14 feet, one room 14 by 14, and another 10 by 12, making four rooms on the lower floor, and four

rooms on the upper floor, with a bathroom; that there was a two-car garage with cement floor and double doors; that he built the house and had lived in it from 1918 until two years previous to the trial; that it was built when material was cheap at a cost of $7,000 or more; that when he left the house it was in good condition; that he lost it through tax-sale foreclosure; that it had not been kept up since he moved out, and the witness valued this house at between $2,500 and $3,000, together with the lots. He fixed the valuation of property No. 2 at $500 to $600; property No. 3 at $1,500, and the vacant lots at $500. He testified that there were two places on the big house on property No. 1 where the stucco was bad, consisting of a crack in the northwest corner and for a distance of two or three feet in the southeast corner. He based his present valuation upon the depreciation which he considered large. He testified that the lumber in the house on property No. 2 was worth $500 or $600 as salvage, and on property No. 3 the house was very well kept up on the outside and well painted; that it was "just a common-built house," and was worth $1,500 in his opinion. The size of the village is about 300 population.

A brother-in-law of the owner, a banker from Arlington, Nebraska, negotiated with plaintiff's counsel for purchase of the No. 1 property, or for an exchange of properties with him. He testified he was acquainted in Washington county and had lived there; that plaintiff's counsel, in a letter, placed the value of the No. 1 property at $1,250, stating that his client had $1,000 in it. They arrived at no basis for an exchange of properties.

A lumberman and coal dealer in the village testified that he had lived there all but seven of his 61 years; that he owned five rental properties, which he had owned for four or five years or longer, and was acquainted with the No. 1 property; that it was in reasonably good condition, needed some repair, had a rental value of $20 to $25 a month and a value of $3,000 to $3,500. He was familiar with property No. 2, stated that it had no rental value but was worth $250 to $300 for salvage; that he had made repairs at property

No. 3 by putting a roof on the house at a cost of $120, and that it had a rental value of $10 a month and a total valuation of $1,250. He valued property No. 4 at $200 to $250.

The plaintiff contends that the evidence offered by the defendant, as briefly outlined above, was incompetent for the purpose of fixing valuation for assessment purposes.

In *Beebe & Runyan Furniture Co. v. Board of Equalization*, 139 Neb. 158, 296 N. W. 764, this court said: "The test as to the qualifications of a witness to testify as to the market value of land, as disclosed by a multitude of cases, is that a witness is qualified to testify to such value if he has had an opportunity to form a correct opinion as to its value. It is not essential that the witness should have bought or sold land in the vicinity. See Jones, Evidence (2d ed.) 485, sec. 387." See, also, *Langdon v. Loup River Public Power District*, 142 Neb. 859, 8 N. W. 2d 201; *Langdon v. Loup River Public Power District, ante,* p. 325, 13 N. W. 2d 168.

"Whether the witness is properly qualified is a question addressed primarily to the sound discretion of the trial judge, and his action will not be reviewed in the absence of a showing that he has abused that discretion. There is no question that professional appraisers and dealers engaged in the business of buying and selling similar property are competent to testify as to value, but it is not necessary that a witness have the status of a professional appraiser or dealer in the class of property in question. Others who are familiar with the property in question and know the prices paid for like property are also competent to testify as to value. One who has bought and sold similar property or who knows the prices paid therefor, even though that knowledge is based on secondary evidence, is competent to give an opinion as to the value of the property in question, provided, of course, he is familiar with that property. The fact that the extent of dealing in the particular kind of property has been limited does not affect the admissibility of the opinion, but merely its weight." 20 Am. Jur. 748, sec. 891.

"It is well established that the value of the use, or the

rental value of property, may be proved by the opinion evidence of witnesses acquainted with the property and by the facts bearing upon its use. The question before the court usually has been the qualification of the witness to give the opinion. Thus, the courts have in many cases permitted witnesses who are acquainted with the property or familiar with the rental value of property of the kind in question to give opinion evidence as to the value of the use of chattels. The propriety of opinion evidence by qualified witnesses upon the question of the rental value or the value of the use of real property is affirmed in many cases." 20 Am. Jur. 755, sec. 899.

It is difficult to lay down an exact yardstick, fixing values of properties in villages with a degree of exactness. Real estate values generally through a period of years, due to many contingencies, fluctuate in accordance with the times and the progress of the community.

Defendant's witnesses consisted of the former owner of property No. 1; another witness acquainted with rental values of properties in the village, and, in addition, a property owner who had five rental properties which he compared with the properties involved. The knowledge which these witnesses possessed of the value of real estate in the village and their acquaintance with the properties, cost, condition and rental value, were sufficient, in our opinion, to qualify them to testify as to the value of such properties for assessment purposes.

In *Aurora Hotel v. Board of Equalization,* 140 Neb. 511, 300 N. W. 419, this court said: "As a general rule of law, the competency of a witness to testify as an expert rests largely in the sound discretion of the trial court whose rulings will not be reversed unless clearly erroneous." Citing *Schmuck v. Hill,* 2 Neb. (Unof.) 79, 96 N. W. 158; *Jensen v. Palatine Ins. Co.,* 81 Neb. 523, 116 N. W. 286; *Beebe & Runyan Furniture Co. v. Board of Equalization, supra.*

In *Chicago, B. & Q. R. Co. v. Shafer,* 49 Neb. 25, 68 N. W. 342, in the opinion at page 31 it was said: "It is sufficient that resident owners of land in a farming neighborhood

have generally been held competent witnesses to the value of real estate in such community. In a leading case upon the subject, *Robertson v. Knapp*, 35 N. Y. 91, the witnesses, all of whom were residents of the immediate neighborhood, some being engaged in farming and others retired farmers, were held competent without further showing. In the opinion it is said: 'There are no certain data which, if given, will fix the value of land. The same data will produce widely different results as to the value, depending, perhaps, on location and the use to which it can be applied, or upon the demand. The value of land in the vicinity is usually understood by all of the residents of a farming neighborhood, without respect to occupation.' The opinion of such a witness may not be the best or most satisfactory evidence attainable, and yet it is difficult to conceive of persons better qualified to testify upon the subject of the value of farming lands than resident owners of like property in the particular locality. It is, to say the least, competent evidence, its weight or probative force to be determined by the jury and depending upon the facts of the particular case." Likewise, the testimony of residents of a small village, acquainted with values of real estate, income therefrom and the condition of the improvements, as heretofore set out in the instant case, constitutes competent evidence, its weight and probative force in this instance to be determined by the court.

Plaintiff contends that the court erred in failing to permit counsel to pursue the cross-examination with reference to the witness Brock. It is true that the court limited this cross-examination to property No. 1. Plaintiff's counsel asked that he be permitted to examine the witness as to the other properties, and the court said: "That is enough."

In *Aurora Hotel v. Board of Equalization, supra*, we said: "The extent, course and scope of cross-examination rests within the discretion of the trial court, and it will not be reviewed unless there has been an abuse of such discretion. *Peterson v. State*, 63 Neb. 251, 88 N. W. 549. Also, under section 20-853, Comp. St. 1929, a violation of the strict rule

of cross-examination will not be considered ground for reversal unless it clearly results in prejudice to the substantial rights of the party complaining." Citing *Brooks v. Thayer County*, 126 Neb. 610, 254 N. W. 413; *Manley State Bank v. Spangler*, 130 Neb. 196, 264 N. W. 459.

While there is no apparent reason why this cross-examination should have been limited, in view of all the evidence and the circumstances, we conclude that it was not an abuse of discretion on the part of the trial court, and its failure to permit further cross-examination of this witness did not prejudice the substantial rights of the plaintiff.

The plaintiff had no objection to the assessed valuation of the lots at $50 each, with the exception of property No. 4, but objected to the assessment of the improvements thereon. It is observed that the trial court determined the value of the real estate for assessment purposes at a much lower figure than the assessor's value by reducing the assessment value more than $1,200.

The decree of the trial court is affirmed.

AFFIRMED.