Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/26/2024 09:06 AM CST

Donald V. Cain, Jr., appellant, v. Custer County
Board of Equalization, appellee.
___ N.W.2d ___

Filed January 26, 2024.    No. S-23-224.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by Nebraska's Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Evidence: Words and Phrases.** Competent evidence is evidence that is admissible and tends to establish a fact in issue.
4. **Administrative Law: Judgments: Words and Phrases.** Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.
5. **Taxation: Valuation: Presumptions: Evidence.** A presumption exists that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented.
6. **____: ____: ____: ____.** If the challenging party overcomes the presumption of validity by competent evidence, the reasonableness of the valuation fixed by the board of equalization becomes a question of fact based on all the evidence presented.
7. **Taxation: Valuation: Proof: Appeal and Error.** On appeal from an action of the county board of equalization, the taxpayer has the burden of showing that a valuation is unreasonable or arbitrary.
8. **Taxation: Valuation: Proof.** The burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of

opinion unless it is established by clear and convincing evidence that the valuation placed upon the property, when compared with valuations placed on other similar property, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.

9. ____: ____: ____. A court decree fixing the value of property under a prior assessment is not admissible to prove the value of real estate under a subsequent assessment.

10. **Taxation: Valuation: Statutes.** The county board of equalization has a statutory duty to fairly and impartially equalize the values of all items of real property in the county so that all real property is assessed uniformly and proportionately.

11. **Taxation: Valuation: Proof.** The burden of proof is on the taxpayer to establish that the value of the property has not been fairly and proportionately equalized with all other properties, resulting in a discriminatory, unjust, and unfair assessment.

12. **Trial: Evidence.** A fact finder can rely only on evidence actually offered and admitted at trial and is not permitted to rely on matters not in evidence.

Appeal from the Tax Equalization and Review Commission. Affirmed.

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellant.

Nicholas F. Sullivan, David R. Mayer, and Claire E. Monroe, of Dvorak Law Group, L.L.C., and Steven R. Bowers, Custer County Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

# I. INTRODUCTION

Nebraska's Tax Equalization and Review Commission (TERC) affirmed the decision of the Custer County Board of Equalization (the Board), which upheld the assessed values of 10 contiguous parcels of agricultural land for tax year 2013. The taxpayer appeals, arguing primarily that the valuation

that we attributed to the property for tax year 2012[1] should have been used when determining its valuation for tax year 2013. We disagree, and otherwise finding no error, we affirm TERC's decision.

## II. BACKGROUND

### 1. Legal Background

Under Nebraska law, all real property, unless expressly exempt, is subject to taxation and is generally to be valued at 100 percent of its actual value.[2] However, pursuant to authority granted by our State's constitution, agricultural and horticultural land is a separate and distinct class of real property for purposes of property taxation.[3] Unlike other real property, agricultural and horticultural land is generally valued at 75 percent of its actual value or its special value, where applicable.[4]

"Actual value . . . means the market value of real property in the ordinary course of trade."[5] Actual value may be determined using professionally accepted mass appraisal methods, including an approach that determines value based on the sales of comparable properties.[6] Assessment means "the act of listing the description of all real property . . . , determining its taxability, determining its taxable value, and placing it on the assessment roll."[7] Taxable value, in turn, has the "same

---

[1] See *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018).

[2] See Neb. Rev. Stat. § 77-201(1) (Cum. Supp. 2022). Cf. *Burdess v. Washington Cty. Bd. of Equal.*, 298 Neb. 166, 903 N.W.2d 35 (2017).

[3] *Burdess, supra* note 2 (discussing Neb. Const. art. VIII, § 1). See, also, Neb. Rev. Stat. § 77-1359 (Reissue 2018) (definition of agricultural and horticultural land).

[4] § 77-201(2) and (3). See, also, Neb. Rev. Stat. § 77-1344 (Supp. 2023) (qualifications for special valuation).

[5] Neb. Rev. Stat. § 77-112 (Reissue 2018).

[6] See *id*.

[7] Neb. Rev. Stat. § 77-126 (Reissue 2018).

meaning as assessed value."[8] Special valuation is also defined by statute,[9] but is not discussed further here because special valuation is not at issue in this case.

## 2. Factual Background

The taxpayer, Donald V. Cain, Jr., owns 10 contiguous parcels of land, totaling 1,093.93 acres, in Custer County, Nebraska. The property is situated southwest of Broken Bow, Nebraska, near the city limits. Like the parties, we treat those parcels as a single unit for purposes of this appeal.

The property consists of "rolling . . . soil with grass on it." The soil is mostly Valentine sand, which the Custer County assessor (Assessor) characterizes as the "lowest-quality soil" in the county. The property also has canyons and slopes of up to 60 percent and is "highly erodible." Approximately 756 acres are irrigated with center pivot irrigation systems "custom-constructed for the specific location where they're found on the property."

The property has been in what the Assessor designates as market area 1 since the current market areas were created around 1990. Market area 1 includes the highest valued land in Custer County.[10] The property was classified as irrigated grassland from approximately 2006 through approximately 2011. However, in or around 2012, the Assessor ceased classifying irrigated grassland separately and incorporated it within a classification that encompassed "whatever was irrigated. Whether it was grass, forage crops, or row crops." Largely as a result of this change, the Assessor increased the "total assessed value" of Cain's property from $734,968 to $1,834,925 for tax year 2012, without improvements being made to the property during this time.[11]

---

[8] Neb. Rev. Stat. § 77-131 (Reissue 2018).

[9] See Neb. Rev. Stat. § 77-1343(5) (Reissue 2018).

[10] *Cain, supra* note 1.

[11] *Id*. at 837, 906 N.W.2d at 290.

Cain protested the increase, arguing that the irrigated portions of his property were distinct from irrigated cropland in their soil type, topography, and land use.[12] We reversed TERC's initial decision and remanded the cause regarding this protest, finding that TERC had applied the incorrect standard of review.[13] However, thereafter, on appeal of TERC's decision on remand, we agreed with Cain.[14] We found that Cain had shown by a preponderance of the evidence that his irrigated grassland was "not comparable to the vast majority of the high quality farming land within market area 1"; instead, it more closely resembled similar properties in lower-valued market areas or Cain's own nonirrigated property.[15] We therefore concluded that the property's "valuation" for tax year 2012 was $870 per acre, for a total of $951,719.10.[16] TERC subsequently entered an order adopting this amount as the property's taxable value for tax year 2012. However, after further litigation, TERC was ordered to treat $951,719.10 as the property's actual value for that tax year.[17]

## 3. Procedural History

The present appeal arose after the Assessor valued Cain's property at $1,927,518 for tax year 2013. Cain protested to the Board, seeking a reduction in valuation, but the Board upheld the Assessor's valuation. Cain then appealed to TERC, which continued its hearing of the matter pending our decision regarding the property's valuation for tax year 2012. Our

---

[12] See *Cain v. Custer Cty. Bd. of Equal.*, 291 Neb. 730, 868 N.W.2d 334 (2015).

[13] *Id*.

[14] *Cain, supra* note 1.

[15] *Id*. at 853, 906 N.W.2d at 299.

[16] *Id*. at 854, 906 N.W.2d at 300.

[17] *Cain v. Lymber*, 306 Neb. 820, 947 N.W.2d 541 (2020); *Cain v. Hotz*, No. CI 20-3703 (Lancaster Cty. Dist. Ct. Apr. 7, 2021) (order issuing writ of mandamus).

decision valuing the property at $870 per acre, for a total of $951,719.10, was issued in 2018.[18] However, litigation over whether that valuation represented the property's actual value or its assessed value continued through 2021.[19]

Thereafter, on February 23, 2022, TERC heard Cain's appeal of the property's valuation for tax year 2013. Two witnesses testified, Cain and Connie Braithwaite. Braithwaite was the Assessor in 2013.

Cain testified regarding the property's nature and use. Cain testified that the property is used to graze cattle and produce forage for cattle, not to grow row crops. According to Cain, the property is not "capable of row-crop production." However, Cain conceded that "not everything on [the] property is native grass" and that forage and grazeable crops, including cane, sorghum, and rye, are planted on "over 100, but under 200," acres. Cain also conceded that row crops could "conceivabl[y]" be planted on the northernmost 10 to 20 percent of the property, either with or without irrigation, but he asserted that doing so would not be "economically feasible." Cain testified that there were no changes to the property or its use between 2012 and 2013.

Cain also introduced into evidence a chart that he claimed illustrated that in tax year 2013, the property's actual value should have been $1,005,966 and its assessed value should have been $744,415. Cain explained that he arrived at those amounts by comparing the "valuation[s]" that the Assessor attributed to the property for 2012 and 2013 and determining that "they had calculated an increase in value of approximately 5.7 percent" between the 2 years. Cain indicated that he was willing to accept 5.7 percent as the "appropriate fraction of increase" over the 2 years. However, Cain stated that he wanted the purported 5.7 percent increase to be applied to the "correct base." Cain then explained that the base should

---

[18] *Cain, supra* note 1.

[19] See, *Lymber, supra* note 17; *Hotz, supra* note 17.

have been the "actual value" that we attributed to the property for 2012, not the higher value that the Assessor allegedly used.

Braithwaite, however, did not corroborate Cain's testimony that the county determined the property's valuation for tax year 2013 by increasing its valuation for tax year 2012 by 5.7 percent. Instead, Braithwaite testified that a "sales comparison" mass appraisal approach was used to determine the value of Cain's property and other agricultural land in Custer County for tax year 2013. Braithwaite explained that this approach entailed averaging the sale prices of "[s]imilar properties" over a 3-year period. However, Braithwaite acknowledged that the mass appraisal included all irrigated land; it was not limited to irrigated grassland.

Braithwaite also testified that she compiled a chart showing the values for "each classification of land in each market area" for tax year 2013. Braithwaite explained that the chart was based on market areas, soil types (including topography and elevation), classes and subclasses of agricultural land, and sale prices of comparable properties. Braithwaite further explained that in assessing Cain's property, the value per acre given in this chart was multiplied by the number of acres within each "Land Valuation Grouping" code on the property to determine the total assessed value for each such code. Braithwaite stated that same methodology was applied equally and uniformly to assess all agricultural property in the county for tax year 2013.

Braithwaite conceded that she was unaware of another location where irrigation systems were customized to applications like those on Cain's property or had the variation in elevation seen there. However, she testified that aside from spot adjustments made to reflect the irrigation of one parcel with water from another parcel, nothing about Cain's property "required special treatment." Braithwaite also noted that there were four irrigated properties near Cain's property with similar soil types that were assessed using the same methodology

and "[were] assessed at the same value" per acre as Cain's property in tax year 2013. Braithwaite testified that in tax year 2013, the properties in market area 1 were equalized; that the value placed on Cain's property was not grossly excessive; and that the values placed on Cain's property and market area 1 generally were reasonable in light of her experience, knowledge, and training.

Following the hearing, TERC affirmed the Board's determination of the property's "assessed value." TERC acknowledged Cain's argument that the valuation that we attributed to the property for tax year 2012 should have been used in determining its valuation for tax year 2013. However, TERC observed that the proceedings regarding the property's valuation for tax year 2012 involved a different standard of review and a different evidentiary record than the present appeal. TERC then found that under the record in this case, Cain's testimony about his property's valuation sufficed to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its decision, but did not constitute clear and convincing evidence that the Board's decision was arbitrary or unreasonable.

Cain filed a timely appeal, which we moved to our docket under Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

III. ASSIGNMENTS OF ERROR

Cain assigns, restated, that TERC erred in (1) failing to recognize that the Board never determined the property's actual value and could not determine its assessed value without having determined its actual value; (2) disregarding equalization evidence proving that his requested upward adjustment from the 2012 value involved the same percentage of increase as comparable properties; (3) arbitrarily and unreasonably affirming the Board's decision, which arbitrarily and unreasonably determined the property's assessed value for tax year 2013 and failed to find a uniform, proportionate actual value; (4) failing to determine the actual value and failing to

accurately determine the assessed value; (5) concluding that a mass appraisal had been appropriately conducted and yielded results supporting the protested valuation; and (6) failing to recognize that if a mass appraisal was conducted, the valuation of the property should have increased at the same rate as other properties.

## IV. STANDARD OF REVIEW

[1-3] Appellate courts review decisions rendered by TERC for errors appearing on the record.[20] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[21] Competent evidence is evidence that is admissible and tends to establish a fact in issue.[22]

[4] Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.[23]

## V. ANALYSIS

We begin with Cain's claim that TERC erred in affirming the Board's decision regarding the assessed value of his property, as that claim ultimately encompasses all his other claims. Because Cain's claims implicate the well-established framework governing TERC's review of the decisions of county boards of equalization, we briefly review that framework before turning to Cain's claims.

---

[20] *Lincoln Cty. Bd. of Equal. v. Western Tabor Ranch Apts.*, 314 Neb. 582, 991 N.W.2d 889 (2023).

[21] *Id*.

[22] *Cain, supra* note 1.

[23] *Lancaster Cty. Bd. of Equal. v. Moser*, 312 Neb. 757, 980 N.W.2d 611 (2022).

## 1. Presumption of Validity
### and Burden of Proof

By statute, TERC is required, in all appeals except those arising from a county tax levy, to apply the standard of review set forth below:

> [I]f the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, [TERC] shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.[24]

[5,6] We have construed this statutory language to create a presumption in an appeal to TERC that a county board has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action.[25] That presumption remains until competent evidence to the contrary is presented.[26] If the challenging party overcomes the presumption of validity by competent evidence, the reasonableness of the valuation fixed by the county board becomes a question of fact based on all the evidence presented.[27]

[7,8] On appeal from an action of the county board, the taxpayer has the burden of showing that a valuation is unreasonable or arbitrary.[28] The burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing

---

[24] Neb. Rev. Stat. § 77-5016(9) (Reissue 2018).

[25] *Moser, supra* note 23.

[26] *Id.*

[27] See *id.*

[28] See *id.*

evidence that the valuation placed upon the property, when compared with valuations placed on other similar property, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.[29]

## 2. TERC's Decision Affirming Property's Assessed Value Was Supported by Facts and Law

In the present case, applying the standard of review set forth above, TERC found that Cain's testimony about the property's valuation in tax year 2013 rebutted the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its decision,[30] but did not constitute clear and convincing evidence that the Board's decision was arbitrary or unreasonable. Neither Cain nor the Board appears to take issue with TERC's conclusion that Cain overcame the presumption of validity afforded to the Board's valuation. Instead, they dispute whether Cain met his burden of persuasion to show that the Board's valuation was arbitrary and unreasonable.

Cain maintains that he met this burden, because the valuation that he attributed to the property for tax year 2013 "accepted [our] determination of value for 2012" and increased that valuation by 5.7 percent, which Cain claims was the amount by which the Assessor increased the value of "all parcels roughly comparable to his" between 2012 and 2013.[31] Cain also claims that he provided the only evidence of the property's actual value for tax year 2013 and that the evidence adduced by the Board regarding the mass appraisal and comparable sales was insufficient to support the assessed

---

[29] Id.

[30] Cf. Cain, supra note 1 (resident owner who is familiar with property and knows its worth may testify as to its value without further foundation).

[31] Brief for appellant at 7.

value that the Assessor and the Board attributed to the property. The Board disagrees.

Assuming without deciding that the parties and TERC are correct that Cain overcame the presumption of validity afforded to the Board's decision regarding the property's valuation, TERC did not err in finding that the Board's valuation was not unreasonable or arbitrary in light of all the evidence presented. The following review of the evidence, as well as Cain's arguments regarding the evidence, explains why we adopt this view.

(a) Reliance on Evidence of Property's Valuation
in Tax Year 2012 Is Misplaced

[9] As was previously noted, Cain bases his view of the property's valuation for tax year 2013 on our opinion regarding its valuation for tax year 2012. Cain argues that the Board and TERC erred by "ignor[ing]" this valuation when determining the property's valuation for tax year 2013.[32] However, Cain's reliance on our valuation of the property for tax year 2012 is misplaced. As the Board notes, we have previously held that the value of property under a prior assessment is not admissible to prove the value of real estate under a subsequent assessment.[33]

For example, in *DeVore v. Board of Equalization*,[34] we rejected the taxpayer's argument that a prior court decree fixing the assessed values of her properties should have been admitted into evidence in her appeal regarding the properties' assessments for a subsequent year. In so doing, we observed that the predecessor to Neb. Rev. Stat. § 77-1301 (Cum. Supp. 2022) required that all real property in the State subject to

---

[32] *Id*. at 4 and 8.

[33] See, e.g., *Affiliated Foods Co-op v. County of Madison*, 229 Neb. 605, 428 N.W.2d 201 (1988); *DeVore v. Board of Equalization*, 144 Neb. 351, 13 N.W.2d 451 (1944).

[34] *DeVore, supra* note 33.

taxation be assessed as of January 1.[35] Based on this language, we concluded that the Legislature contemplated that the "valuation for property for assessment purposes for each year could be different, according to the circumstances."[36]

We took a similar view in *Affiliated Foods Co-op v. County of Madison*,[37] rejecting the taxpayer's argument that under the principles of res judicata, a property tax valuation which was "fixed by the [court] in earlier litigation" was binding on the board for a subsequent year. In that case, like in *DeVore*, we pointed to statutory language which we construed to mean that the Legislature contemplated properties' valuation for assessment purposes varying annually.[38]

At oral arguments, Cain attempted to distinguish the present case from *Affiliated Foods Co-op* on the grounds that the property at issue in *Affiliated Foods Co-op* had been improved between one assessment and the next, while Cain testified that there were no changes to his property or its use between 2012 and 2013. However, our reasoning in *Affiliated Foods Co-op* was based on the statutory language previously noted. Nothing in our opinion suggests that the improvements made to the property between the 2 years were key to our holding.

---

[35] See *id*.

[36] *Id*. at 355, 13 N.W.2d at 453. Cf. *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 102, 555 N.W.2d 39, 45 (1996) (recognizing exception to general rule of res judicata where "there has been an announced public policy by the legislative branch of government that the preclusion issues do not apply").

[37] *Affiliated Foods Co-op, supra* note 33, 229 Neb. at 613, 428 Neb. at 206.

[38] See *id*. (discussing Neb. Rev. Stat. § 77-1502 (Cum. Supp. 2022) that provides for board of equalization to meet on or after specified date each year to review and decide protests). See, also, *Reagan v. Sarpy Cty. Bd. of Equal.*, No. A-98-061, 1999 WL 38174 (Neb. App. Jan. 26, 1999) (not designated for permanent publication) (finding that even though court had ordered property's value to be reduced in prior year by 30 percent due to its proximity to commercial swine facility, board was not barred under principles of res judicata from reducing its value by lesser amount in subsequent year).

And we have adhered to the rule that a property's value under a prior assessment is not admissible to prove its value under a subsequent assessment in cases where no improvements were alleged to have been made over time.[39]

Cain also points to exhibit 40, which he characterizes in his brief on appeal as an appraisal of his property. The exhibit itself is untitled. However, even if the document in question is seen to be an appraisal, it does not attribute any specific valuation to the property. Nor is the purported appraisal certified to have been performed according to professional standards by an independent appraiser using professionally approved methods.[40] No appraiser testified on Cain's behalf at the hearing.

### (b) No Evidence That Valuation of Comparable Properties Increased by Less Than Valuation of Cain's Property

Cain also points to "equalization evidence," which he claims shows that the assessed value attributed to his property by the Assessor and the Board was unreasonable and arbitrary. According to Cain, this evidence shows that the value of other properties increased by 5.7 percent between tax years 2012 and 2013, while the value of his own property increased "by 200%" over the same period due to the Assessor's failure to use the value that we attributed to the property for tax year 2012 when determining its value for tax year 2013.[41]

[10-12] Cain is correct that the county board of equalization has a statutory duty, informed by the principles of

---

[39] See, *Omaha Paxton Hotel Co. v. Board of Equalization*, 167 Neb. 231, 92 N.W.2d 537 (1958); *DeVore, supra* note 33. See, also, *Reagan, supra* note 38.

[40] Cf. *Western Tabor Ranch Apts., supra* note 20 (when independent appraiser using professionally approved methods of mass appraisal certifies appraisal was performed according to professional standards, appraisal is considered competent evidence under Nebraska law).

[41] Brief for appellant at 12.

uniformity and proportionality set out in our State's constitution, to "'fairly and impartially equalize the values of all items of real property in the county so that all real property is assessed uniformly and proportionately.'"[42] However, the burden of proof is on the taxpayer to establish that the value of the property has not been fairly and proportionately equalized with all other properties, resulting in a discriminatory, unjust, and unfair assessment.[43] Cain failed to meet this burden because he did not introduce any evidence regarding the rate of increase in other properties' valuation between tax years 2012 and 2013.[44] A fact finder can rely only on evidence actually offered and admitted at trial and is not permitted to rely on matters not in evidence.[45]

Cain repeatedly asserts in his briefs on appeal that "the increase in valuation for 2013 over 2012 for all property like [his], and for irrigated land in the County, was 5.7%."[46] However, none of the evidence that he cites in the briefs in support of this argument shows that the valuation of other properties increased by 5.7 percent between tax years 2012 and 2013. Instead, the evidence that Cain points to shows that he arrived at the figure of 5.7 percent by considering the valuations that he claims the Assessor gave to his own property for tax years 2012 and 2013. Cain testified to this effect, stating as follows:

> So, when they gave me my revised valuation for 2013, I calculated the change in that valuation from what they had in 2012. And that change reflects all the different soil types and different things in there, okay? And so, for this particular property and [its] uniqueness, they

---

[42] *Moser, supra* note 23, 312 Neb. at 773, 980 N.W.2d at 623.

[43] *Id.*

[44] See, e.g., *Moser, supra* note 23 (rule of uniformity applying to both rate of taxation and valuation of property).

[45] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[46] See, e.g., brief for appellant at 7.

had calculated an increase in value of approximately 5.7 percent. The primary exhibit upon which Cain relies similarly states that "5.7% = Custer Co[.] Bd[.] of Eq[.] increase of all Cain properties."

Cain's brief on appeal also mentions "the County's own figures certified to the Department of Revenue which fixed the change at 5.7%."[47] However, the only evidence in the record regarding a certification to the Department of Revenue was testimony about the "ag[ricultural] discount," or the percentage of reduction from actual value or special value afforded to agricultural land when determining its taxable value for purposes of property taxation, for tax year 2013.

### (c) The Board's Evidence Not Deficient in Manner Suggested by Cain

The remainder of Cain's arguments concern alleged deficiencies in the evidence adduced by the Board in support of the assessed valuation, including the Board's failure to present evidence of the property's actual value and the conclusory nature of the Board's evidence regarding the mass appraisal and comparable properties. Individually and collectively, these arguments are without merit for the reasons set forth below.

### (i) Assessor and the Board Presented Sufficient Evidence of Property's Actual Value

Cain claims that he presented "[t]he only evidence of [the property's] actual value" for tax year 2013.[48] He maintains that there was no evidence of the actual value that the Assessor and the Board attributed to the property for that year. Cain takes this alleged absence of evidence of actual value to mean that the Assessor and the Board failed to

---

[47] *Id*. at 11.

[48] *Id*. at 7.

determine the property's actual value. As a result, Cain claims that they had no basis for determining the property's assessed value. According to Cain, the "[f]ailure [of the Assessor and the Board] to determine the actual value and make necessary adjustments to it [to determine the assessed value] constitutes a fundamental error," because the statutes regarding the taxation of agricultural and horticultural land require that such land be taxed at a percentage of its actual or special value.[49] We take a different view of the evidence in the record than Cain does.

Braithwaite did testify that the values shown in the property record files adduced into evidence at the hearing were assessed values. However, it does not follow from this testimony that the Assessor never determined the property's actual value or that there was no evidence of the actual value that the Assessor and the Board attributed to the property. In fact, there was testimony to the contrary from Braithwaite, as well as from Cain himself. Braithwaite testified that properties' actual values were determined "ahead of time" "off of the sales" and that her office subsequently used the "assessed value of the actual value" in its work. Both Cain and Braithwaite similarly testified that the actual value of a property can be determined by dividing its assessed value by the amount of the "ag[ricultural] discount," and there does not appear to be any dispute on appeal that the property's assessed value and the amount of the agricultural discount were in evidence. As such, there was sufficient evidence of the actual value that the Assessor and the Board attributed to the property.

Cain points to two statements wherein he claims that Braithwaite "admitted" that her office "never determined" the property's actual value.[50] However, neither statement has the significance that Cain attributes to it. Braithwaite's

---

[49] *Id.*

[50] *Id.* at 16.

statement that "[w]e never work with actual value" was part of a broader explanation wherein she made clear that the actual values were first determined based on sales and that her office thereafter worked with the assessed values after the agricultural reduction. Braithwaite's statement that she did not use "actual value for any purpose" in her work or maintain records of actual value is similarly to be understood in light of her testimony that properties' assessed values were determined based off of their actual values.

We also understand Cain to take issue with the alleged failure of TERC, in particular, to determine the property's actual value. Cain seemingly suggests that TERC was required to make such a determination under our decision regarding the property's valuation for tax year 2012 or under Neb. Rev. Stat. § 77-5017(1) (Reissue 2018). We disagree. Our prior decision concerned the property's actual value. However, that decision arose from a proceeding under Neb. Rev. Stat. § 77-1507.01 (Reissue 2018), which expressly authorizes TERC to determine "the actual value or special value of real property" in cases where a failure to give notice prevented the timely filing of a protest or appeal. In the present case, in contrast, timely notice was given, and Cain brought an appeal under § 77-5016(9).

At the hearing, Cain did ask TERC to determine the property's "actual value for tax purposes[.] Not the assessed value, the actual value." However, we disagree with Cain's apparent argument that because he made such a request, TERC's decision affirming the Board's determination regarding the property's assessed value constituted excessive relief under § 77-5017(1). Cain contrasts the language in § 77-5017(1) authorizing TERC to make "such orders as are appropriate for resolving the dispute but in no case shall the relief be excessive compared to the problems addressed," with language in a former statute, since repealed, that authorized TERC to "hear . . . and determine anew all questions raised before the county

board."[51] The apparent implication of this contrast is that TERC was limited to determining the property's actual value in this case because Cain made the request that he did.

But even if we were to construe these statutes as Cain proposes, TERC's decision affirming the Board's determination regarding the property's assessed value cannot be seen as excessive relief in light of the facts and circumstances of this case. Cain himself testified that he understood that the amounts he was appealing represented assessed values. Cain also testified that a property's actual value can be determined from its assessed value, as was previously noted.

### (ii) Evidence Regarding Mass Appraisal and Comparable Sales Was Not Deficient

Cain also points to alleged defects in the Board's evidence regarding the mass appraisal and comparable properties. Specifically, Cain observes that there was no mention of a mass appraisal in our prior decision regarding the property's valuation for tax year 2012. He also argues that there was "no tangible mass appraisal in evidence"[52] in the present appeal and that "[n]o appraiser testified about [the] mass appraisal."[53] He similarly argues that there was no evidence that the Assessor, the Board, or TERC followed the guidelines that are required by statute to be considered in determining what constitutes a comparable sale for purposes of a mass appraisal.[54] Those arguments are without merit.

As was explained above, each year's assessment is separate, and a property's valuation for 1 year depends upon the evidence pertaining to that year.[55] As such, the fact that there

---

[51] See Neb. Rev. Stat. § 77-1511 (Reissue 1996).

[52] Brief for appellant at 20.

[53] Reply brief for appellant at 9.

[54] See Neb. Rev. Stat. § 77-1371 (Reissue 2018).

[55] See, e.g., § 77-1301(1) ("[a]ll real property in this state subject to taxation shall be assessed as of January 1 at 12:01 a.m.").

was no mention of a mass appraisal in our decision regarding the property's valuation for tax year 2012 is immaterial.

As to the other factors noted by Cain, we are not persuaded that the Board's evidence regarding the mass appraisal and comparable sales was as conclusory as Cain suggests. Braithwaite testified that her office began by mapping sales of comparable properties over the past 3 years on a map of the county and then tied this to the preexisting market areas, which reflected natural boundaries, soil types, the depths to which wells had to be drilled, and other factors. Braithwaite similarly testified that when determining the average value of comparable sales, sales between close family members and certain other sales were excluded. One of the guidelines set forth in statute for determining what constitutes a comparable sale is whether sales between close family members "include considerations that fail to reflect current market value."[56]

However, even if we were to share Cain's limited view of Braithwaite's testimony, Cain cites no authority to support the proposition that the mass appraisal should have been in evidence, that the Board should have presented testimony detailing how the mass appraisal was conducted and how comparable sales were determined, or that Braithwaite should have specifically discussed the guidelines regarding comparable sales. Cain cites our decision regarding the property's valuation for tax year 2012 for the proposition that "[w]hen an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law."[57] We have no issue with this proposition. However, the proposition merely establishes that an appraisal having the specified characteristics constitutes competent evidence. It does not purport to require testimony by an independent appraiser to prove

[56] See, e.g., § 77-1371(5).

[57] *Cain, supra* note 1, 298 Neb. at 850, 906 N.W.2d at 298.

that a county assessor performed a mass appraisal, as Cain seemingly suggests.

Cain also argues that by failing to limit the mass appraisal to irrigated grassland, the Assessor made the "same error" that the Assessor made as to the 2012 valuation and arrived at an assessed value like that we rejected in our earlier decision.[58] However, our prior decision was based, in relevant part, on the fact that "[m]ost of Cain's and [his appraiser's] testimony about the unique qualities and value of Cain's land was unrefuted, except for the Assessor's competing position that all irrigated property must be valued as irrigated cropland."[59] The record in this case was different, as TERC observed.

In this case, Cain did testify to the effect that his irrigated grassland was unlike irrigated cropland and was unique. However, Cain admitted that forage crops were planted on "over 100, but under 200," acres and that row crops could "conceivabl[y]" be planted on the northernmost 10 to 20 percent of the property, either with or without irrigation. The exhibit that Cain characterizes as an appraisal of his property also designated the property's use as primarily "[i]rrig[ated] [c]ropland II," although it did state that the "current tax burden of the property . . . for [its] current use [is] more than the gross rental rates of many similar Sandhills grasslands that are not supplemented with irrigation." The exhibit did not, however, attribute any specific value to Cain's property or to other properties. Braithwaite, in contrast, testified that there were four irrigated properties near Cain's with similar soil types that were assessed using the same methodology and that had the same value per acre as Cain's in tax year 2013. Braithwaite also testified that there were three to four other properties in the county that were irrigated grassland and were also affected by the changes that the Assessor made to the irrigated classification in or around 2012.

---

[58] Brief for appellant at 10.

[59] *Cain, supra* note 1, 298 Neb. at 852, 906 N.W.2d at 299.

### (iii) Mass Appraisal Supported
### Assessed Valuation

Cain argues, in the alternative, that even if the evidence adduced by the Board shows that a mass appraisal was appropriately conducted, the mass appraisal does not support the assessed valued that the Assessor attributed to the property, because the rate of increase in the value of Cain's property was significantly higher than the rate of increase in the value of other properties. Cain also argues that the assessed value that the Assessor attributed to the property runs afoul of Neb. Rev. Stat. § 77-112 (Reissue 2018). Cain concedes that § 77-112 allows mass appraisals to be used to determine actual value. However, he maintains that under § 77-112, even when a mass appraisal is conducted, the analysis of the uses and restrictions applicable to real property must still "include a consideration of the full description of the physical characteristics of the real property." Cain argues that the full description of his property's physical characteristics was not considered, because the assessed value that the Assessor attributed to the property failed to take into account the property's unique nature as irrigated grassland. Based on the evidence in the record here, we take a different view.

As was previously noted, Cain points to no evidence in the record that the valuation of other properties increased at a lower rate than the valuation of Cain's property.

Similarly, while Cain believes that the property's assessed value should have been less, he points to no physical characteristics of the property that the Assessor allegedly failed to consider. Cain testified about his property's soil type, elevation, irrigation, and use, all factors that he argues makes it unique. However, Braithwaite testified that those factors were taken into account in the mass appraisal, which was used to determine the assessed value that her office attributed to Cain's property. Braithwaite further testified that "spot adjustments" were made to Cain's property to reflect the irrigation of one parcel with water from another. However, Braithwaite

was otherwise of the view that nothing about Cain's property "required special treatment."

## VI. CONCLUSION

For the reasons stated above, we find no errors appearing on the record. Therefore, we affirm TERC's decision upholding the assessed value of the property for tax year 2013.

Affirmed.